# CHARLESTON.

KEENER *v.* KEENER.

*(HOLT, JUDGE, absent.)

Submitted June 19, 1890.—Decided December 10, 1890.

DEED—CONSIDERATION.

An agreement to maintain and support another is a valuable consideration, and will sustain a transfer of property.

*M. H. Dent* for appellants, cited 28 W. Va. 340.

*John T. McGraw* for appellees.

BRANNON, JUDGE :

Appeal from a decree of the Circuit Court of Taylor county taken by William Keener and John Keener.

Hannah Keener died some years since, and William Keener and John Keener filed their bill in the Circuit Court

*Case submitted before Judge Holt's appointment.

of Taylor county stating that the death of said Hannah intestate and without issue left as her distributees brothers and sisters—the plaintiffs and defendant George Keener, and two sisters; that John Evans qualified as her administrator; that said decedent left two thousand dollars personal property, consisting of a little furniture, and money, notes, and accounts; that she was residing with her brother George, and that he immediately on her death took such property, money, notes and accounts into his possession, and fraudulently converted the same to his own use, pretending they were a gift to him; and that he refused to turn over to said administrator any of said property, or to account for it, though he produced no authority to retain it; that George Keener had converted to his use about five hundred dollars, the distributive share of said Hannah in her father's estate, of which he was representative; that since the death of said Hannah he, George Keener, had received from James K. Smith about five hundred dollars money placed in his hands by Hannah Keener; that said administrator refused to collect from George Keener said sums, but colluded with him to cover up and retain the same, and was liable, therefore, to account therefor; and the plaintiffs prayed that George Keener be compelled to render a full account of all the estate of said deceased, Hannah, and what may have been converted by him to his own use; that the accounts of said administrator be settled, and the estate distributed among the distributees.

George Keener's answer denies the pretensions of the bill, claiming the property as his own, and denying any liability to account for it.

The Court held that the law was for the defendants, and dismissed the bill, it having been admitted in court that the deceased left no other estate than that claimed in the bill.

The only property shown to have been owned by the deceased is a note of James K. Smith for three hundred and eighteen dollars given her for money she lent him, dated April 1, 1874, and a note for one hundred dollars, given her by John Keener, barred by limitation. The theory of the plaintiffs is that George Keener had no title to this property except by gift, and that the gift is not valid. If this theory

could be sustained by the evidence, the plaintiffs would succeed; for though there had been a gift during the life. of Hannah Keener, perfected by delivery of possession, it must fail, because Hannah resided for years before and at her death in the house of George Keener, and as a member of his family; and our Code of 1887, p. 615, c. 71, s. 1, provides that " no gift of any goods or chattels shall be valid unless by deed or will, or unless actual possession shall have come to and remained with the donee or some person claiming under him. If the donor and donee reside together at the time of the gift, possession at the place of their residence shall not be a sufficient possession, within the meaning of this section." *Dickeschied* v. *Bank*, 28 W. Va. 340.

But the defence of George Keener is that his right is not based on a gift, but on a transfer for valuable consideration; that the said Hannah had agreed with him that if he would not go west, but remain and care for and support her, she would give him all she had; and that he did so, and that she transferred the notes in question to him for such valuable consideration, not as a gift. Allowing her to live with him as a member of his family, caring for her,. and maintaining her, was a valuable consideration, and a sufficient one on which to base such transfer, for an undertaking to support one is a valuable consideration to support a conveyance. It is of frequent occurrence. Bump Fraud. Conv. 218; *Henderson* v. *Hunton*, 26 Gratt. 926.

Some quotations from the depositions will best answer how far this defence is sustained. Eliza C. Travis states that she (Eliza) knew Hannah Keener twenty five years; that she lived with George Keener; that at different times she heard Hannah say that she had an arrangement with George that, if he would stay and take care of herself and her sister during their lives, he should have all their estate of every description; that he did go and live with them several years, and supported them and their father for five years, and after.the father's death he still lived with and supported them until Hannah's death; that she (deponent) lived within a mile of them. She elsewhere states: "I heard them speak of it at different times before Hannah's death. She said she had given her property up to her brother to take care of

her and her sister as long as they lived, and when they were dead the property was his; she said she and her sister had given up all their property to George to take care of them as long as they lived; that she thought it better to let him have it to take care of them than to let strangers have it." Elsewhere she states: "She said she had given it all over to George. She said he talked of going away, and that they had persuaded him to stay and take care of them, and he should have all their property when they were dead and gone."

Martha Coplin states: "I have known them twenty seven or twenty eight years. George was at his father's, taking care of him and helping to do the work. His sisters, Hannah and Katy, lived with their father. They were feeble; Hannah was more feeble than Katy. When the old gentleman died, George sold out and was going west. Hannah was down at my house at the time, and said they were going to make him one more offer; that if he wouldn't go they would give him all they had—if he wouldn't go west, but stay and take care of them—that, if he would go, they would get Mr. Knott; that nobody else should have what they had; that they would do as the old maids Luzaders did; they would give it all to Mr. Knott to take care of them. I heard them both say so, and Hannah in particular. I heard them both say they didn't intend that John and William Keener should have any of their property, because they had already got more than they should have had from their father's estate. * * * Hannah and Katy said their brothers John and William neglected coming to see them. I have heard Hannah say that she never intended that John and William should have any of her money; that she would rather strangers should have it. I have heard her repeat time and again that they had neglected her; that she was growing old."

Thomas Slane states that, about a year before Hannah's death, Knott and he were together in presence of Hannah, and Knott repeated the arrangement that had been made between George and Hannah, and the bargain was that George was to keep her her lifetime, and she had given George all she had for taking care of her. * * * "I

have heard her remark afterwards that all she had she intended that George should have. I have heard her say that there was no one to take care of her but her brother George; that her other two brothers never came near to see anything about her. At another time she said George was going to leave, and that she had given him all she had to stay at home, and take care of her."

No depositions were taken to contradict all this.

A deposition of Evans, the administrator, says when he called on George Keener for the property, he replied that he had a note on James K. Smith, and one on John Keener for one hundred dollars, and he would bring them over, but later refused to let him have them. Keener denies this, saying that he told the administrator that the notes were his, and he would keep them, and that they had been given to him by his sister before her death for caring and providing for her. It is shown that he did care and provide for her. This evidence shows an intent to transfer the property for the consideration of care, maintenance, and support of the sister; and it shows declarations by her that she had given them to him, thus indicating a consummated transfer of possession; and we find George Keener in possession of the note, for Smith says he paid him money on his note after her death. As she stated she had given him the property, it is more reasonable to say that he had acquired this possession before her death than after it. This is confirmed by the fact that she conveyed her land to George. Thus I think we may say that for a valuable consideration, namely, the abandonment of his intention to go west, which may have been the defeat of his plan of life, the comfort of his presence with his maiden sisters in ill health, loneliness, and increasing age, and the labor, money, and care expended in their maintenance, she gave him this property and consummated the gift by delivery of possession.

I shall not therefore, discuss the question whether, if George Keener did not have possession of the notes before this agreement, that would constitute an assignment in equity and justify his retention of them. I may admit that, though the evidence is full to show an agreement to transfer, yet it is not very full to show actual deliv-

ery of possession before the death of Hannah Keener ; yet the evidence fairly shows it, and there is no showing that he did not then have possession. The circuit judge has weighed the evidence, and come to that conclusion, and, unless we think he plainly erred, we ought not to disturb his finding. In fact we think the case sustains him.

The circumstance that on June 1, 1887, Hannah and Catharine Keener conveyed to George Keener a tract of land in consideration that he would support them during life, is relied upon as showing that the pretension of George Keener that he was also to have the personalty is unfounded. We do not so consider it. At best, it is only a circumstance tending in that direction, if indeed it amounts to that. It is no estoppel against his claiming the personalty also. The deed does not state that the land was the only consideration for support. The personalty is not mentioned in the deed ; but that may be explained by the fact that the law requires a deed to convey the land, but none to transfer the personalty. In our view the fact that the witnesses say the agreement was that George was to have all Hannah's property of every description, the execution of the deed tends to confirm this evidence and his claim to the personalty. The case involves a question of fact, and we see no reason for reversal. And I may add that, as is plainly shown by the evidence, this decision carries out the intent and wish of the decedent, bestowing her property where she wished it to go. We affirm the decree.

AFFIRMED.