# CHARLESTON.

## REYNOLDS'S ADM'RS *v.* GAWTHROP'S HEIRS.

Submitted June 6, 1892.—Decided November 19, 1892.

1. LIMITATIONS OF ACTIONS—FRAUDULENT CONVEYANCES.

Under section 14, c. 104, of the Code, the period of five years limiting a suit to avoid a voluntary conveyance begins to run from the making of the conveyance.

2. LIMITATIONS OF ACTIONS.

Where a person by any indirect ways or means obstructs the prosecution of a right, the time during which such obstruction continues shall not be computed in the limitation periods prescribed in Code, c. 104.

3. LIMITATIONS OF ACTIONS—FRAUDULENT CONVEYANCES.

If a voluntary deed be made for lands, and its existence purposely concealed by the parties, and it is withheld from recordation for nine years with intent to prevent the grantor's creditors from knowing of its existence, and the creditors being ignorant of it are thereby lulled into a feeling of security, and by reason thereof do not sue to avoid it until after five years from the date of the deed, the time during which the creditors are thus obstructed is not to be computed as a part of the term limiting a suit to annul such deed.

4. FRAUDULENT CONVEYANCES—EVIDENCE.

While the burden of proving a deed fraudulent in fact as to creditors is upon the creditors, positive evidence of fraudulent intent is not required, but it may be deduced from the circumstances of the transaction and the relation and situation of the parties to it and to each other. Circumstantial evidence, if adequate to satisfy the court of such fraudulent intent, is sufficient and often the only evidence attainable.

5. FRAUDULENT CONVEYANCES—NOTICE.

Where the circumstances connected with a conveyance fraudulent as to the grantor plainly establish the complicity of the grantee in the fraudulent intent, it is not necessary to show by direct and positive proof notice to the grantee of such intent.

6. FRAUDULENT CONVEYANCES—BONA FIDES—BURDEN OF PROOF.

A conveyance of a valuable tract of land by father to son, the father being largely indebted, it being all the land owned by the

father, and he having left only some personalty hardly, if at all, adequate to satisfy his debts, induces a strong suspicion of fraud, and renders the conveyance *prima facie* fraudulent, and calls upon the grantee to furnish clear proof of the *bona fides* of the act.

*M. H. Dent* for appellant cited 22 W. Va. 356; 32 W. Va. 507; 33 W. Va. 449.

*F. Woods* and *B. F. Martin* for appellees.

I.—*The proper order in which claims upon lands should be charged.*—27 Gratt. 479; 27 W. Va. 663; 31 W. Va. 156; 30 W. Va. 443.

II.—*A party claiming under a deed is bound by the general character of the consideration stated in the deed.*—70 Md. 272; 41 Md. 402; Waite Fr. Conv. § 221; Bump. Fraud. Conv. 598; 1 Greenl. Ev. § 275; 64 Md. 583; 1 H. & J. 175.

III.—*Contract to support grantor not in writing not enforceable.*—3 Par. Cont. *21, *22; 11 Gratt. 636; 27 W. Va. 258; 23 W. Va. 725; Bish. Cont. § 1259; 1 Pom. Eq. §§ 397, 400, 401; 2 Pom. Eq. § 899; Bump. Fraud. Conv. 218; 2 Herm. Estop. § 599; 10 W. Va. 143.

IV.—*Fraud is usually proved by circumstances.*—23 W. Va. 644; 29 W. Va. 451; Wait Fraud. Conv. 566, 572, § 280; 35 W. Va. 719; 22 W. Va. 585; 64 Md. 296.

V.—*Transactions between father and son require less proof to show fraud than the same between strangers.*—30 W. Va. 555; 23 W. Va. 639.

VI.—*Transfer of all a man's goods, pendente lite, mark of fraud.*—Wait Fraud. Conv. § 233; Id. § 231; Bump Fraud. Conv. 37; Wait Fraud. Conv. § 326.

VII.—*Concurrent possession of grantor and grantee badge of fraud.*—22 W. Va. 585; 34 W. Va. 105.

VIII.—*Possession of vendor all that need be shown in the first instance.*—Bump Fraud. Conv. 64; Wait Fraud. Conv. § 245; 34 W. Va. 105.

IX.—*Concealment of deed significant of fraud.*—Wait Fraud. Conv. § 235; Bump Fraud. Conv. 39.

X.—*Not error to hear the causes together.*—10 W. Va. 645.

XI.—*Exceptions must point out the error complained of with reasonable certainty.*—24 W. Va. 540; 14 W. Va. 531.

XII.—*Parts not excepted to are admitted to be correct.*—19 W. Va. 459; 21 W. Va. 262.

XIII.—*Adults not excepting are deemed to acquiesce.*—24 W. Va. 524; 27 W. Va. 227; 22 W. Va. 581; 24 W. Va. 525; 26 W. Va. 563.

XIV.—*To final decree bill of review is proper.—To an interlocutory decree bill in the nature of a bill of review and petition for rehearing is proper.*—10 W. Va. 298; 24 W. Va. 689; 22 W. Va. 404; 26 W. Va. 569; 25 W. Va. 208.

XV.—*Weight of evidence as to value of property.*—21 W. Va. 234.

XVI.—*Party not aggrieved can not appeal.*—78 Va. 720; 1 Bart. Ch'y Pr. 158; 1 H. & M. 404.

XVII.—*Title of purchaser not affected by reversal of order of sale.*—Code (1891) c. 132, s. 8; 10 W. Va. 143; 77 Va. 473, 475; 66 Md. 586; 71 Md. 861.

XVIII.—*Sale can not be set aside merely for errors in decree ordering it.*—19 W. Va. 368; 1 Wall. 627.

XIX.—*Defects in proceedings of commissioner of sale may be cured by the court.*—19 Wis. 680; 68 Ill. 58.

Brannon, Judge :

The administrators of C. E. Reynolds and others, creditors of Allen B. Gawthrop, brought a number of separate suits against him and others to avoid certain deeds from him to his sons for lands in Taylor county;—one dated 11th May, 1874, to Perry Gawthrop;—one dated 22d February, 1875, to Evan M. Gawthrop;—and two dated 1st May, 1876, and 25th June, 1885, to Thomas A. Gawthrop. The court held void the two deeds to Thomas A. Gawthrop and subjected the lands thereby conveyed to various debts of Allen B. Gawthrop; and Thomas A. Gawthrop appeals.

When Allen B. Gawthrop made to his son Thomas A. Gawthrop the deed of 1st May, 1876, he was indebted according to his own statement at least one thousand two hundred dollars to one thousand four hundred dollars, exclusive of interest, and exclusive of a note of one thousand four hundred and fifty dollars to Christian Smith, with interest from 1st December, 1872; but from his specification of his indebtedness to divers persons, and payment of

three hundred and seventy five dollars made by him in November, 1876, on another debt to Smith, his indebtedness was considerably larger than the total estimated by him.

On the 6th of February, 1875, an action was brought against Joshua E. Gawthrop and Allen B. Gawthrop upon said note of one thousand four hundred and fifty dollars executed by them to Christian Smith, which was stubbornly contested by Allen B. Gawthrop. Two trials took place, involving large costs and expenses, which, after pending until September 15, 1885, resulted in a judgment by compromise of seven hundred dollars.

So it is, that, when Allen B. Gawthrop made the deed to his son Thomas, he was seriously indebted by reason of undisputed debts and in danger of a large recovery in the Smith suit; and, while he had been the owner of a tract of four hundred and fifty acres of land, worth from fifteen thousand dollars to twenty thousand dollars he had conveyed to Perry Gawthrop one hundred and forty six acres, and to Evan M. Gawthrop one hundred and fifty three acres, retaining one hundred and fifty acres, which was all the land he owned, and by its conveyance to Thomas A. Gawthrop he stripped himself of all the land to which his creditors could look for satisfaction. About 1880 he passed to his son Thomas A Gawthrop all his personalty, worth, at least, three hundred dollars or four hundred dollars. He afterwards inherited from his sisters one ninth of two thirds of a tract of one hundred and sixteen acres, and by deed dated 25th June, 1885, he conveyed this property to said Thomas A. Gawthrop. At the time of these transfers the Smith suit was pending. Thomas A. Gawthrop knew of this indebtedness and of the suit.

We hold these two conveyances from Allen B. to Thomas A. Gawthrop void as to the creditors assailing them.

The deed of May 1, 1876, recites a consideration of three hundred dollars and natural love and affection. The tract contained in fact two hundred and four and three forth acres, worth eight thousand five hundred dollars. It was voluntary on its face, except only as to the money consideration of three hundred dollars, and Allen B. Gawthrop's

debts charged against it by the decree do not amount to the value of the land less the three hundred dollars.

But it is claimed that, viewed as a voluntary conveyance, the land can not be made liable to the debts, because the deed is dated May 1, 1876, and suit to avoid it was brought to October rules, 1885, and it is barred by the period of five years fixed by section 14, c. 104, Code, as the term for a suit to avoid a voluntary conveyance.

This statute commences to run from the making of the deed, which is *prima facie* on its date, *Hunter* v. *Hunter*, 10 W. Va. 321. In this instance the deed was not put on record till the 20th of February, 1885, and the bills charge that the creditors remained utterly ignorant that such a deed had been made, trusting in the continued responsibility of their debtor, until awakened to the fact of the conveyance by its recordation, and that the withholding it from record was intended to obstruct, hinder, and delay the creditors in the collection of their debts, and thus defraud them.

Now, it would seem to be hard and unjust that a party should hide away a voluntary conveyance, withhold it from the public record, where people usually and reliably obtain information of transfers of realty, his creditors all the while ignorant of such conveyance, and thus effectually secrete it from his creditors until the period of the statute had run, and then plead the statute, and have the benefit of the time he so kept it from the record. Section 18, c. 104, of the Code, provides that, where a party shall by any "indirect ways or means obstruct the prosecution" of a right, the time that such obstruction continues shall not be computed. *Vanbibber* v. *Beirne*, 6 W. Va. 168; 1 Rob. Pr. (New) 634.

Here the debtor lived for years neighbor to his creditors, they believing him to be the owner of the land, and solid and solvent, renewing notes, and talking with them about his debts, but never whispering the conveyance to them, remaining in possession of and using the land as he had done for years; Thomas Gawthrop, a single man, residing with him, as he always had done. When the deed was acknowledged, Allen B. Gawthrop and Thomas A. Gawthrop

went together to the justice, while the latter was working on a road, and the justice was called away from where the hands were, and the deed acknowledged, and Allen B. Gawthrop told the justice to say nothing about it. The grantee is found to carry out the program of secrecy by keeping it from the record nine years; but, after the father had been sued for some of his debts, just before the session of court at which judgments might be expected, the deed is put on record, thus preventing the judgments from becoming liens over the deed, which would have been the case had it not been recorded before judgment. How can we fail to see that the purpose in keeping the deed from the record was to lull creditors into false security, and prevent the enforcement of their debts until the statute would bar, and that thus for nine years the parties, by such indirect ways and means, obstructed the prosecution of suits by creditors to annul the deed as voluntary?

It has been held that the omission to record deeds is a circumstance to be considered to stamp them as fraudulent as to creditors. Bump Fraud. Conv. § 39; Wait Fraud. Conv. § 235; opinion in *Greer .v. O'Brien*, 36 W. Va. 277 (15 S. E. Rep. 77.) Surely we can consider the circumstance as one tending to show a design to conceal the existence of the deed from creditors confiding in the belief that their debtor is still the owner of property in his possession, and thereby throw them off their guard, and delay suits, which, if they had had knowledge of the deed, they would have brought.

But the deed was fraudulent in fact not simply voluntary. It was certainly the design of father and son by it to defeat the Smith debt, if not others, and that is enough to overthrow it as to all debts. The evidence shows that the father was greatly distressed about the suit to recover the Christian Smith debt, the justice of which he denied. He told the justice when acknowledging the deed that he was making it to get rid of the Smith debt, and that he could not and would not pay it. He also told the justice to say nothing about the deed. As the justice was his brother-in-law, he probably felt safe in making these revelations to him. He stated to Giles and Reynolds, that in

making the deed he did not design to defeat any creditors except Smith. Before this deed was made he proposed to another brother-in-law, Devers, to convey the same land to him, but it was to be a sham, and the purchase-money was to be paid back to Devers and the land conveyed to Gawthrop's wife, he saying that the reason why he wished to fix it so was his desire to defeat the debt claimed by Smith's estate. He afterwards told Devers, that a lawyer, Mr. Bassell, informed him that such a transaction would not stand, and hence he did not make the proposed deed to Devers.

The purpose of Allen B. Gawthrop is plain from these declarations, though they are not admissible against the grantee except those made to the justice, as part of *res gestæ*. But when we consider all the circumstances we can not doubt the son's knowledge and complicity in this design. They lived together in daily intercourse. The son knew well the father's indebtedness, and of the Smith suit and his father's anxiety and distress about it. He went with his father to acknowledge the deed, saw him call the justice away from the road-hands, with whom he was working, to go apart to acknowledge the deed in private; and after the party composed of the father, his son, the justice and his son had gotten about one hundred and fifty yards from the hands, his father told him and the justice's son to stop, while his father and the justice went aside, when the father pulled out the deed, and had the justice to read it, and take his acknowledgment. Why this secrecy? The son knew of it. The son continues to reside with his father on the farm, and the father treats the farm as he had, no change of outward appearance in its management telling of the important deed. It is a close act between father and son. Judging from human nature and men's acts as they usually occur, are we going far to to say that the son had notice of his father's design? Was he innocent while his father was guilty? Hardly. He could not have kept from knowing the whole matter.

Where the facts and circumstances connected with the act plainly establish complicity of the grantee in the bad intent, direct proof is not necessary to show notice of such intent to the grantee. *Core* v. *Cunningham*, 27 W. Va.

206.  As there exists  a strong motive in  a father to provide for his child, therefore  a  conveyance  to  a son, when assailed by the  father's creditors, is scanned more closely than  if it  were  between  strangers.  *Knight* v.  *Cupito*, 23 W.  Va. 639;  *Livey* v.  *Winton*, 30 W. Va. 555 (4 S. E. Rep. 451).   Under these authorities it requires  less evidence to impugn such conveyance than one between strangers, and, when a *prima facie* case of fraud is made, it shifts the burden,  and  requires  a  stronger  showing  of good  faith. Concurrent possession of grantor  and grantee  after absolute conveyance is a badge of fraud, affording  a presumption of fraud  calling for proof  from  the  grantee of *bona fides.*  *Livesay* v. *Beard*, 22 W. Va.  586; *Reilly* v. *Barr*, 34 W. Va. 105 (11 S. E. Rep. 750.)

Here a man owns four hundred and fifty acres of valuable land.  He is largely indebted, with interest accumulating.   He is threatened with a  large  recovery upon a debt which he denies.  He conveys a large  part to one son ; a few  months  later  a  large part to another  son ; a few months later the entire balance  to another ; the last conveyance stripping him  of all land to which  creditors could look,  and  he  is  left with only a  few hundred dollars' worth  of personalty—a  frail, perishable dependence for creditors.  In a few years he  passes that to the son to whom he conveyed the last remnant of his land.  Shortly after, about  nine acres of land comes to him by descent, and he conveys that also to  this same son.  All  the while the creditors remain unpaid.   When asked how he expected to pay the debts he owed when  he  conveyed the last vestige of his land, he  says he held  a  bond of  one thousand dollars, given by one of his sons, Perry, and nine hundred dollars due from  another, Thomas  A., as part consideration for the lands conveyed them; but those sums are not mentioned in the  deeds, and no lien is reserved for them. He did not turn over  the bond on Perry  Gawthrop to any creditor or collect it himself and apply it, but he kept it in secret for years until barred, and  Perry  refused to pay it; thus favoring son at the expense of creditor as to the very fund he says he designed for the creditor.

He and his son Thomas A. Gawthrop say  that the deed

to the latter for the one hundred and fifty acres does not state a true consideration when it says that it was for three hundred dollars cash and natural love and affection, but that the true consideration in addition to the three hundred dollars, was nine hundred dollars, to be thereafter paid, and support for his father and mother. If this be true, why did not the deed say so, and contain a guaranty of compliance with the contract by lien or charge on the land for such a large sum of money, and even the bread of life and raiment and shelter in the waning life of the old father and mother? Could even a son be trusted on the score of filial love in such grave matters? It has often in such cases proven faithless and evanescent under the bribery of gain. If such was the consideration, and the purpose honest, the deed would have contained such guaranty; but, if put in the deed, creditors might seize upon the debt. The omission to provide for the payment of so large a sum as nine hundred dollars is a circumstance against the good faith of the act.

A stipulation for future support of the grantor or his family is a valuable consideration, but, being a reservation for the benefit of a debtor, his interest under it, so far as the covenant remained unperformed, would be liable to creditors, though, if free from fraud, it would stand valid as a security to the grantee for what he had expended under it before it was assailed by creditors; but, if the transaction is *mala fides* as to both parties, it would be like any other valuable consideration paid by the grantee—the conveyance would be good to him for no purpose, and would not stand good to reimburse him for support furnished before the deed was assailed. *Keener* v. *Keener*, 34 W. Va. 421 (12 S. E. Rep. 729).

If we were even willing to view the deed in question as free from fraud in fact, and simply voluntary, then, since it recites the consideration of money as three hundred dollars, and the residue consideration as love and affection, I should say that, as to creditors, the deed must be taken to state the exact extent of the money consideration and the exact extent of the consideration of love and affection, and that the one could not be enlarged by oral evidence to the

diminution of the other; since, even if we concede that oral evidence may enlarge the consideration, yet it can not prove one of different nature, supplanting consideration of love and affection with valuable consideration, or *vice versa;* and therefore the grantee could not enlarge the money consideration from three hundred dollars to nine hundred dollars, thus increasing the valuable consideration in any apportionment of the consideration between that of value and that merely meritorious, to the prejudice of creditors. Bump Fraud. Conv. 598; Wait Fraud. Conv. § 221. But as we view the transaction as one infected with fraud in fact, the question is not important.

In passing on the character of the two conveyances to Thomas A. Gawthrop we must remember that they stripped him of the last acre of land—an important factor in the case; for when a party seriously indebted and involved in suits for debts conveys away all his substantial estate, especially to a son, it is a strong circumstance against the *bona fides* of the act. Wait Fraud. Conv. § 231; opinion in *Smith* v. *Yoke*, 27 W. Va. 643. This argument is strengthened, when we remember, that these conveyances were the latest in a series of transactions, by which the debtor wholly deprived himself of a large estate and eloigned it from his creditors.

The grantor alleges that these conveyances were not intended to defraud creditors, but were simply the execution of an honest purpose long contemplated to distribute his land among his children. Doubtless he had such purpose; but he must be just before generous. He dare not execute that purpose leaving his creditors to go unpaid. He conveyed away from creditors a fine estate, taking no guaranty or lien from his sons, taking not a single step, making not a show of provision, to assure his creditors that they should be satisfied. The defences, or, rather, excuses, for this action made by these parties are only the usual excuses presented in such cases, and are readily detected by courts of justice, and rated at their proper worth.

The conveyance of the nine acres in the tract of one hundred and sixteen acres is only a part and parcel of the scheme to remove the grantor's property from the just de-

mands of his creditors. After pronouncing the other deed bad, it would be going pretty far to hold this one good. The deed for said nine acres recites a consideration of three hundred and fifty dollars not saying whether it was paid or not, and retaining no lien, betraying the same purpose to get the property out of the hands of the grantor, and retaining no lien for the purchase-money, though, as I understand, it was not paid down. The father says the consideration was paid by his son on the Findley and Mason and Smith debt and the Evans debt, while the son says he paid it on the Smith debt; they thus varying as to its application, and suggesting to us, that the understanding between them as to its application, if there was any, was very loose and indefinite.

It is said that there is no positive proof of fraud as to either deed, especially as to the deed for the nine acres. Fraud is hardly ever proven positively, and usually is shown by the outlook, the circumstances and environment of the transaction, and the situation and relations of the parties, and must be tested by our knowledge of human nature and the motives and purposes, which move men in the ordinary transactions and affairs of life. Courts of justice while conceding to honest acts their wide and ample defence must look through the devious ways and the thin gauze, by which fraud is sought to be hidden, and must not let it go scot-free for want of direct, explicit and positive testimony. Were this required, fraud would hold its head aloft unchallengeable. We can not look into the mind and positively declare its secret workings and designs; but we can take its acts and works, and from them glean their nature and the purpose in view. *Goshorn* v. *Snodgrass*, 17 W. Va. 717; *Burt* v. *Timmons*, 29 W. Va. 450 (2 S. E. Rep. 780); *Reilly* v. *Barr*, 34 W. Va. 95 (11 S. E. Rep. 750;) *Bartlett* v. *Cleavenger*, 35 W. Va. 720 (14 S. E. Rep. 273).

We think the Circuit Court's decision is right on the evidence and circumstances of the case in holding these conveyances fraudulent; but the affirmance of that decision is called for also by the principle that, as the evidence is voluminous, and somewhat conflicting, and the decision dependent on the weight of evidence, we would not dis-

turb the decision unless we were satisfied that it was clearly erroneous. *Smith* v. *Yoke*, 27 W. Va. 639; *Doonan* v. *Glynn*, 28 W. Va. 715; *Bartlett* v. *Cleavenger*, 35 W. Va. 720 (14 S. E. Rep. 273).

It is urged in argument in defence of the deed of 1st of May, 1876, that its face shows its voluntary character; thus openly leaving the land liable to creditors, and that this fact repels all idea that there was fraudulent purpose in fact. While this contention has force, it is not conclusive. A deed, though voluntary, may yet be fraudulent in fact as to existing creditors, as in *Rogers* v. *Verlander*, 30 W. Va. 620 (5 S. E. Rep. 847) where a party owning no personalty made such a deed for one third of his realty, the balance being worth little more than his existing debts, and the deed was held to be fraudulent in fact.

Here Gawthrop conveyed all his realty, retaining a little personalty, inadequate to pay his debts. The deed, though voluntary, would hinder and impede creditors and render the subjection of the land more difficult. And then, though the deed did show its voluntary character, neither it nor its character was known to creditors, and it was not recorded for nine years. The concealment of a deed is not so potent to stamp it with fraudulent intent in fact as to existing creditors as it would be as to subsequent creditors extending credit in ignorance of it; but where, as in this case, such concealment is for the purpose of keeping creditors from knowing of its existence or voluntary character, and thereby prevent their attacking it within the period of limitation, that purpose would stain the deed, though voluntary, with the stigma of fraud in fact, because the design in connection with it was to delay and defeat creditors. In *Greer* v. *O'Brien*, 36 W. Va. 277 (15 S. E. Rep. 74) the doctrine is stated that, while a voluntary deed, made while a party is in debt, does not necessarily make it ..udulent, yet, when to these facts additional suspicious circumstances are added, the deed becomes so fraudulent, and nonrecordation is there held a suspicious circumstance.

There is no error in hearing the causes together. There was no order of consolidation technically speaking. They were separate suits by different creditors, seeking a com-

mon relief—the overthrow of conveyances in the way of their debts and might have been brought in one·suit, and were properly heard together, so that one decree might marshal the various debts in proper order, and avoid different and inharmonious decrees. Such is the common and convenient practice. *Wyatt* v. *Thompson,* 10 W. Va. 645.

If there were any error in ranking the debts as to the lands, it does not aggrieve Thomas A. Gawthrop, the only appellant. His petition for appeal is in behalf of himself and his individual creditors, who asserted debts against the land as his. It is true, that he might individually complain, if the land had been improperly subjected to the debts of his father, taking it away from the son's creditors; but we have decided that this has been properly done.

It was not necessary, in such a suit as this, to give notice to creditors or lien-holders of Allen B. Gawthrop. *Core* v. *Cunningham,* 27 W. Va. 207.

DECREE AFFIRMED.