# CHARLESTON.

ARMSTRONG v. BAILEY *et al.*

(BRANNON, JUDGE, *dissenting.*)

Submitted June 9, 1897—Decided November 17, 1897.

1. FRAUD—*Burden of Proof.*

   A plaintiff who alleges fraud must clearly and distinctly prove the fraud alleged in the bill. The *onus probandi* is on him, and, if the fraud is not strictly and clearly proved as it is alleged, relief cannot be granted. (p. 784.)

2. TRUSTS—*Parol Evidence.*

   Parol evidence to establish a trust must be clear and unquestionable to produce such result. (p. 784.)

43 778
43 754

43 778
48 688

43 778
50 206
50 858

43 778
52 320

43 778
54 441

43 778
56 648
57 379
57 484

43 778
62 79

43 778
64 228

· Appeal from Circuit Court of Taylor County.

Bill by Adolphus Armstrong against Thornsbury Bailey and others. From a decree for defendants, plaintiff appeals.

*Affirmed.*

A. ARMSTRONG, in pro. per.

W. R. D. DENT, for appellees.

McWHORTER, JUDGE :

On the 4th day of February, 1869, Burton Despard and wife conveyed by deed, to John W. Bailey, George Bailey, and E. S. Shackelford, a tract of one hundred and fifty-seven and one-half acres of land in Taylor County, in consideration of the sum of two thousand three hundred and sixty-two dollars, to be paid thereafter as provided in said deed, the payments being evidenced by the several bonds of the purchasers, bearing date January 11, 1869, and the vendor's lien retained in said deed to secure the said purchase money. The purchasers, together with Thornsbury Bailey, the father of John and George Bailey, and father-in-law of said Shackelford, took possession of the land, built a house and made other improvements on it. The father with his family, including said John and George, who were then unmarried, and a younger brother, Harvey A. Bailey, occupied the premises as a home. After some time, John and George married, each building a house on the said land, and accupying the same, while the father and mother, with Harvey and a younger sister, continued to occupy the first house built. On the 6th of March, 1883, the purchasers, John W. Bailey, George Bailey, and E. S. Shackelford, and their wives, sold and conveyed, by deed of that date, to Harvey A. Bailey, the younger brother, fifty and one-half acres, a part of said tract of land, in consideration ·of seven hundred and sixty-six dollars and sixty-seven cents, retaining in said deed their vendor's lien for said purchase money, and also providing in said deed the following clause : "But, to secure said land, a dowry is hereby retained for Thornsbury Bailey and Catherine Bailey, his wife, during their natural lives." This deed was duly executed but not recorded until the 8th day of February, 1892.

On the 25th day of February, 1892, Adolphus Armstrong, a judgment creditor of Thornsbury Bailey, sued out of the clerk's office of the circuit court of Taylor county a subpœna in chancery against Thornsbury Bailey, John W. Bailey and Syrene Bailey, his wife, George Bailey and Basheba Bailey his wife, Ephriam S. Shackelford and Henrietta Shackelford, his wife, and Harvey A. Bailey, returnable to March rules, 1892. And at March rules, all the defendants having been served, said Armstrong filed his bill, alleging that in consideration of $—— paid in equal amounts by Thornsbury Bailey, the father, and his two sons John W. and George Bailey, on the 4th day of February, 1869, Burton Despard sold to them jointly the said one hundred and fifty-seven and one-half acres of land, and that although Thornsbury paid one full third of said purchase money to said Despard, through said Shackelford, caused or procured said Despard to make said deed to Ephraim S. Shackelford, son-in-law of said Thornsbury, and his two sons John and George Balley, "in order to conceal and deceive and consummate the fraud" in said bill charged; that said Thornsbury Bailey owned one full third of the one hundred and fifty-seven and one-half acres of land purchased by him and his two sons John W. and George Bailey, paid one-third of the price, and has from the date of said purchase at all times owned and now owns —— acres of said land; that, after they so purchased the land by arrangement and understanding between him and his said two sons, a portion of the land was set apart for said Thornsbury, as between him and his two sons; that he built a house and made other improvements thereon, and has continued to reside in said house, and still resides therein, and that said fifty and one-half acres belongs to Thornsbury, though the legal title is in his son Harvey A. Bailey; that Thornsbury procured the deed of the 6th of March, 1883, to be made by John W. and George Bailey and E. S. Shackelford and their wives for the full share of interest belonging to said Thornsbury to said Harvey A. Bailey, who was a young man, unmarried, at date of deed, residing with his father on the land, and was under 21 years of age; that said Shackelford never paid anything for said land, except what he paid for Thornsbury, who provided the money so paid to Despard;

that said Harvey A. Bailey paid no part of the price of said land; that it is not his land, but the land of Thornsbury Bailey; that what the grantors call a "dowry" is retained in said deed for the benefit of said Thornsbury and Catherine, his wife, during their natural lives, meaning thereby to reserve an estate for life in said land for said Thornsbury and Catherine, and charging that Thornsbury, through Shackelford, bought and paid for one full third of the one hundred and fifty-seven and one-half acres, and, being indebted, said Thornsbury did not want to appear as being the owner of any part of it, and had the deed made to Shackelford for his undivided interest; that afterwards the deed was made to Harvey, but not to be recorded, lest what is called "dowry" therein should be sold for debts of Thornsbury, particularly the debt of plaintiff; that Thornsbury procured the deed to be made to Harvey with intent to delay, hinder and defraud his creditors, especially plaintiff; that Harvey had full notice of the fraudulent intent before and at the time of the making of the deed, and was a party to such fraud; that, many years ago, plaintiff loaned said Thornsbury some money, and long before said deed to Harvey was made; that on the 27th of January, 1885, he obtained a judgment before Lewis Haymond, a justice, for three hundred and eighty-two dollars and thirty-four cents, with interest from that date, and costs, two dollars and five cents; that he had the same docketed in the clerk's office of Taylor county court, and that the same is a lien on the fifty and one-half acres belonging to Thornsbury; that the lien for seven hundred and sixty-six dollars and sixty-seven cents retained in said deed was not for any purchase money due or to become due to the vendors, or any person, but was fraudulently retained in said deed to deceive and mislead, and caused to be done by Thornsbury with the intent to hinder, delay, and defraud plaintiff and other creditors in the collection of their debts; that Shackelford held said land as a trustee for said Thornsbury Bailey, and not otherwise, it being the land of said Thornsbury from the date of purchase from Despard; and praying that said deed to Harvey A. Bailey be declared fraudulent and void as to plaintiff's judment, that said fifty and one-half acres be sold, *etc.*, and for general relief.

Thornsbury Bailey filed his answer, denying the allegations of the bill, and alleging that he has no interest in the land purchased as alleged; that long before the purchase by his sons John and George and his son-in-law, Shackelford, from Despard, he was a poor man; and that, since the purchase, "he has remained poverty stricken, and was not at any time during this period financially able to make the purchase of said land, or any part thereof, as charged in the bill, and in fact did not do so, and had nothing to do with making the contract of purchase with the said Despard; that he furnished no money towards the payment on the land, and paid none on the same"; that he was not a party to the transaction; and makes complete denial of all the material allegations in the bill. Defendants John W. and George Bailey filed their joint answer, and Harvey A. Bailey his separate answer, all denying the allegations of the bill.

The plaintiff, in support of his bill, filed the depositions of E. S. Shackelford and John Lucas, the justice who took the acknowledgment of the deed of March 6, 1883, to Harvey A. Bailey. Shackelford testifies that John and George Bailey and himself went together to make the purchase from Despard, and made the contract for it; that, in the spring following the purchase, the boys were all at home with the old gentleman, and they all went onto the land together; they built one house at first, and all lived in it together until John and George got married, when they built separate homes; that Thornsbury has ever since continued to reside there; that his understanding is that they made a division of the land, and held and used it in separate pieces, and in answer to the question, "Why did you join in the deed to Harvey A. Bailey for the part of the land that Thornsbury Bailey built his house on and occupied?" Shackelford says: "There were several reasons. I intended Thornsbury to have a home while he lived, for him and the old lady. They were very poor. I asked old Daddy Bailey who I should make that deed to, and he said, 'Make it to Harvey.' I asked him how he wanted it made. He said to have his maintenance reserved in the deed. I said to him, if that was done, they would sell it for his debts, and he would be thrown out of a home. He then said, 'Let the deed just be made to Harvey,—a clear deed.'

I objected to that, and told him that Harvey might marry a woman that the old fellow could not live with, and might throw him out of a home. They then agreed to make a silent deed, not to go to record until after the old man's death, and I agreed to it,"—and says the last payment he made on the land to Despard or his agent was fifty dollars fetched to him by Thornsbury Bailey, but he does not know where he got it. Witness Lucas testifies that he got the word through Mr. Shackelford to prepare the deed, which was written and acknowledged at Thornsbury Bailey's dwelling house, on the land in controversy; that he had a plat of the whole tract of the Despard land with three divisions laid down on it and there were three deeds written and executed that day for the three division,—one to John W. Bailey, one to George Bailey, and the other to Harvey A. Bailey,—and Shackelford and his wife joined in all of these deeds; that he was directed by E. S. Shackelford as to the terms in the deed to Harvey A. Bailey, and the terms and provisions of the deed were talked over and agreed on at Bailey's on that day; and that it was agreed by Shackelford and Thornsbury Bailey and Harvey A. Bailey for the deed not to be recorded until the death of Mr. Bailey. "There was no reason given, but it was intimated to me that there * * * debts, and that Mr. Bailey had nothing, and he wanted to procure a home for him." Witness Lucas said he did the carpenter work on the house first built on the land, and was paid for it by George Bailey; that Thornsbury Bailey had never worked very hard since he had been there; that he had been troubled with the rheumatism. Thornsbury Bailey testified that he had nothing to do with the purchase from Despard; that he paid no part of the purchase money, and had no interest in the purchase, but that the boys, in making the deed, had reserved a lifetime interest in it, because he had no home, and was not able to buy one; that the fifty dollars he gave to Shackelford to pay on the land was the boys' money, that they had drawn as the proceeds of timber that they had taken off the place. The testimony of both John and George Bailey is that Thornsbury paid no part of the purchase money, and had nothing to do with the contract or purchase; and it is very clear from the whole testimony in the case that Thornsbury was rheu-

matic, able to work but little, very poor, and not able to purchase a home or to have kept one without the aid of his sons and son-in-law; that the purahase money to Despard was paid out of the proceeds of timber taken off the land, except the balance of some three hundred and seventy-five dollars yet unpaid when the deed was made to Harvey A. Bailey, and which he assumed and paid, which, together with the provision in the deed imposing upon him the maintenance and support of his parents, Thornsbury and Catherine Bailey, during their natural lives, was a fair consideration for the land conveyed to him, and, if it were not a full consideration, no one has a right to complain, as Thornsbury had no interest, either equitable or legal, in the property to be affected by the claims of his creditors, but simply a provision made by his children for the support of himself and wife in their declining years. There is no allegation in plaintiff's bill as to when the indebtedness of Thornsbury Bailey to him was created. The presumption is that it was long after the purchase from Despard, in February, 1869, as suit was not brought on it until 1885, fifteen years threafter.

"A plaintiff who alleges fraud must clearly and distinctly prove the fraud alleged in his bill. The *onus probandi* is on him, and if the fraud is not strictly and clearly proved, as it is alleged, relief cannot be granted, although the party against whom relief is sought may not have been perfectly clear in his dealings." *Harden* v. *Wagner*, 22 W. Va. 356, 366; Kerr, Fraud & M. 382; *Gibson* v. *Randolph*, 2 Munf. 310. "Whenever the courts permit parol evidence to be received to establish a trust, they always require such evidence to be clear and unquestionable, to produce such result." *Troll* v. *Carter*, 15 W. Va. 567, Syl. 7; *Coleman* v. *Parran*, (decided at this term) 28 S. E. 769.

Appellant charges in his bill "that said Ephraim S. Shackelford held said land as a trustee for said Thornsbury Bailey, and not otherwise, it being the land of Thornsbury Bailey from the date of the purchase from Despard," and says in his brief:" "The bill was taken for confessed as to Shackelford, who purchased the third of the land for Thornsbury, and who conveyed the legal title to Harvey." Why defendant Shackelford failed to answer the bill is not clear and appellant makes him his witness, and shows by him

that Thornsbury had nothing to do with the purchase from
Despard, and that he was very poor, and not able to pro-
vide himself a home. The most that can be said from the
evidence is that the support of Thornsbury and Cath-
erine Bailey is made a part of the consideration for the con-
veyance of a tract of land in which Thornsbury had no
interest, and never had. "An agreement to maintain
and support another is a valuable consideration, and will
sustain a transfer of property." *Keener* v. *Keener*, 34 W.
Va. 421, Syl. (12 S. E. 729). Appellant utterly failed
to establish the fraud or the trust alleged in his bill.
There is no error in the decree complained of, and the same
is affirmed.

BRANNON, JUDGE (*dissenting*).

I agree, on second thought, contrary to first inclination,
that Armstrong cannot subject the fee. He has not clearly
established an express trust; that is, an agreement, at the
time the two young Baileys and Shackelford purchased of
Despard, that Thornsbury Bailey was to have the Shackel-
ford interest, or any other interest. He is not shown to
have any vested interest in the purchase. Any subsequent
oral agreement would be invalid under the statute of
frauds. And there can be no resulting trust: (1) Because
it is not shown that Thornsbury Bailey paid any purchase
money, except fifty dollars, and that was not his money,
and there was no understanding that it was paid with in-
tent to give him an interest; and (2) a resulting trust
cannot arise *ex post facto*, but must arise at the time of the
original transaction. If Thornsbury Bailey had an inter-
est, Armstrong's judgment being docketed before the deed
to Harvey Bailey was recorded, that deed would be void
as to Armstrong's judgment; but a creditor is not entitled
to more than his debtor had, and Thornsbury Bailey had
no interest for the judgment to attach to. As Thornsbury
Bailey had no interest, the agreement to keep the deed
from record to avoid letting his creditors know of the res-
ervation of a life estate would not make the deed void.
They had a right to conceal the fact.

But I do not see how we can help subjecting the life es-
tate of Thornsbury Bailey to the judgment. The deed
warrants the land to Harvey Bailey and heirs forever, and

adds: "But, to secure the land, a dowry is hereby retained for Thornsbury Bailey and Catherine Bailey, his wife, during their natural lives." The grantors created a life estate for Thornsbury, and put in no words to protect it from Armstrong's judgment, and it was a lien on it. The clause was meant to reserve, not a mere support to Bailey, but to give him and his wife use and control during life, the right to occupy and take rents and profits, just as a widow holds possession and takes the whole profits during life. Hence the word "dowry." It meant nothing else. What else did it mean? The evidence of the parties shows they so understood the clause. This makes a life estate. One may be created by reservation as well as by grant. 1 Kerr, Real Prop. § 558.

*Affirmed.*