# CHARLESTON.

MURDOCH v. BAKER et al.

. Submitted February 2, 1899—Decided March 22, 1899.

1. FRAUDULENT CONVEYANCE— *Purchaser—Notice*.
   Where it clearly appears, in a chancery cause brought by a creditor to set aside a deed made by his debtor for all of his property, that such debtor, for the purpose of escaping such creditor, conveys all of his real and personal estate to a purchaser, even for value, who has knowledge of the creditor's pursuit, and is aiding the debtor to escape the same, such purchaser will be held to have participated in the fraudulent purpose of his grantor, and his conveyance will be avoided as to such creditor (p. 84).

2. FRAUDULENT CONVEYANCE—*Purchaser— Complicity of Grantee*.
   A creditor cannot purchase the goods of his debtor at a price in excess of his debt, when he knows that the excess so paid debtor is by the latter to be placed beyond the reach of his other creditors. Such purchaser is a participant in the fraud of his debtor, whether his purpose be to aid him or not. (p.87).

3. FRAUDULENT CONVEYANCE—*Complicity of Grantee—Notice—Evidence.*

　　Where the circumstances connected with a conveyance, fraudulent as to the grantor, plainly· establish the complicity of the grantee in the fraudulent intent, it is not necessary to show by direct and positive proof, notice to the grantee of such intent. (p. 86).

4. HUSBAND AND WIFE—*Presumption—Burden of Proof.*

　　Where a lot is conveyed to a husband and wife and in a suit to subject the land the bill charges that she paid no money for the property, the burden is on her to show that she paid for it, and, in the absence of proof, the presumption is that her husband furnished the means of payment.· (p. 88).

Appeal from Circuit Court, Mingo County.

Bill by J. N. Murdoch against Eli Baker and others. A decree was rendered from which complainant appeals.

*Reversed.*

PRICHARD & JONES and MERRICK & SMITH, for appellant

H. K. SHUMATE, for appellees.

ENGLISH, JUDGE:

On the 12th day of July, 1895, J. N. Murdoch filed his bill in the Mingo County circuit court against Eli Baker, Hally Baker, J. L. Weinstein, Moses Weinstein, and the Huntington Brewing Company, a corporation, alleging that he was a wholesale druggist in Parkersburg, and that prior to the 12th of March, 1895, as such druggist, he sold to the defendant, Eli Baker certain goods and merchandise, and since then other goods, and that on the 1st of May, 1895, Eli Baker executed to plaintiff his negotiable promissory·note for one hundred and eighty-three dollars and twenty cents, payable sixty days after date, at the Williamson Bank, for the amount due for goods sold to said Baker previous to March 6, 1895, which note was presented for payment, payment refused, and was protested for non-payment; that after the 6th of March, 1895, plaintiff sold to said Baker· other goods to the amount of two hundred and forty-six dollars and thirty-five cents, an account of which was exhibited with his bill. These various bills became due and payable sixty days after date, and bore interest from maturity, but that neither note nor account had been paid to him by

said Baker or any other person. The plaintiff further alleged that Allen Ferrill and Rebekah R. Ferrill, on March 12, 1895, conveyed to Eli Baker and Hally Baker, his wife, a certain lot for the consideration of one hundred and twenty-five dollars, as expressed in said deed,—the lot known as "No. 15" in the town of Thacker,—and about that time said Eli Baker erected on said lot a hotel, and the purchase money for the lot and the cost of building said hotel was borne and paid for by Eli Baker; that about the 1st of May, 1895, the defendant Moses Weinstein became interested in the saloon conducted on the premises; that the money used in conducting the saloon as well as the hotel was furnished solely by said Eli Baker; that on the 22d of June, 1895, a deed from Eli Baker and Hally Baker, his wife, to the defendant J. L. Weinstein was admitted to record in the clerk's office of Mingo county court, which deed bears date June 1, 1895, conveying said house and lot, together with the personal property about said hotel, the consideration named being eight hundred dollars cash in hand paid. The plaintiff, however, charges that in fact there was no consideration paid for said property, and that said deed was made for the purpose of hindering, delaying, and defrauding the creditors of Baker, especially the plaintiff. It is also alleged that, if there was any consideration passed from Weinstein to Eli Baker, it was the canceling of a pre-existing debt due Weinstein by Baker, and, if such indebtedness existed, the deed operated as a general assignment for the benefit of all of said Eli Baker's creditors. The plaintiff further charges that at the time said deed was executed Eli Baker was wholly insolvent; in that, while said deed of March 12, 1895, was made to said Baker and his wife, yet in fact said Hally Baker put no money into said property, and, so far as her interest on said property under said deed is concerned, the same was a voluntary conveyance, and is void as to the creditors of Eli Baker, and especially the plaintiff; that a large portion of plaintiff's claim was contracted prior to the execution of said deed of March 12, 1895; that the Huntington Brewing Company is a creditor of said Baker in the sum of about one hundred and five dollars; that the note above referred to came due on July 3, 1895,

and that on the 2d of July, said Baker wrote to plaintiff from Thacker, stating that he was not able to meet the note when due, and asking for further indulgence,—a copy of which letter is exhibited; that at the time this letter was written said Baker was preparing to leave the State; that he has since absconded, and his present whereabouts are unknown. Plaintiff therefore prays that said deed dated July 1, 1895, from Eli Baker and Hally Baker to J. L. Weinstein be declared null and void, canceled, and set aside as being made to hinder, delay, and defraud the creditors of Baker, and especially the plaintiff; that the deed of March 12th., executed by Allen Ferrill and Rebekah R. Ferrill, in so far as it conveys one-half interest to Hally Baker be declared a voluntary conveyance to her; that her interest in said deed be held liable for the debts of said Eli Baker; that said property be sold, and the proceeds applied to the debts of Eli Baker, and especially to plaintiff; that a receiver be appointed to take charge of the personal property mentioned in said deed of June 1, 1895, and dispose of same under the order of the court; and that an injunction be awarded to restrain said Weinstein from conveying, incumbering, or in any wise disposing of said house and lot; and for general relief.

On September 10, 1895, the Blue Grass Liquor Company, a corporation, filed its petition in the cause, claiming to be a creditor of said Eli Baker to the amount of sixty-six dollars and one cent for goods, etc., sold to him, joined in the allegation of the bill as to the deed from Baker and wife to Weinstein being fraudulent and voluntary, and prayed to be made a party, and allowed to share in the costs of the suit, that its debt be declared a lien on said property, and the property sold to discharge the liens thereon. On September 19, 1895, said Weinstein filed his demurrer to plaintiff's bill, and the same was set down for argument, and tendered his separate answer, to which plaintiff replied generally. The defendant, by his answer, put in issue the material allegations of the bill, and claims that eight hundred dollars was the true consideration paid for said property; that at the time of the purchase the sum of one hundred and eighty two dollars was due him from Eli Baker and Hally Baker upon a joint note exe-

cuted to him by them; that Eli Baker at that time owed him thirty-three dollars and fifty cents for borrowed money, evidenced by note dated May 13, 1895; that he assumed to pay for said Baker to N. J. Keadle, sheriff of Mingo County, the sum of two hundred dollars, which he paid to him a short time before the purchase of said property; that he also paid to the Pabst Brewing Company, as part of the consideration for said lot, one hundred dollars; also to Leon Sternberger sixty-seven dollars for the same purpose; and at the time of said purchase he paid to defendants Eli Baker and wife the sum of two hundred and thirty-five dollars cash,—making a total of eight hundred and seventeen dollars and fifty cents, the seventeen dollars and fifty cents excess of the consideration being for some shingles and brick which he was to get from them. On the 14th of January, 1896, the cause was referred to a commissioner to ascertain and report: (1) The debts of the defendant Eli Baker, their dates and amounts, to whom due, and the interest thereon. (2) What property the defendant J. L. Weinstein received from said Baker, the consideration paid therefor, and the value thereof. (3) What property said Eli Baker now owns, and the value thereof. (4) Any other matters which he might deem pertinent, or might be requested by any party interested. Subsequently the same commissioner was directed to ascertain and report what interest Hally Baker had in the property conveyed by the defendant Eli Baker and Hally Baker to said Weinstein by deed dated June 1, 1895; second, the value of the property conveyed by said deed; and, third, as to whether the defendant Eli Baker, at the time of the execution of said deed, was insolvent. The commissioner, in pursuance of said decree, made his report, which was excepted to by said Weinstein, the exceptions sustained on May 21, 1897, and the cause referred to another commissioner, with the same instructions and requirements under which the first commissioner acted. Depositions were taken by both of said commissioners, and said second commissioner reported the debts of said Eli Baker, with interest to September 13, 1897, to be as follows: To the Blue Grass Liquor Company, seventy-five dollars and thirty-eight

cents; to J. N. Murdoch, four hundred and ninety-one
dollars and forty-four cents; and that Baker was indebted
in the sum of six hundred or seven hundred dollars prior
to the agreement of sale of the property described in the
deed of June 1, 1895. That the amount paid for said prop-
erty by said Weinstein was eight hundred dollars, paid
as follows: Two hundred and thirty-five dollars in cash
June 22, 1895; two hundred dollars to N. J. Keadle in May
or June, 1895; one hundred dollars to Pabst Brewing Com-
pany, June 5, 1895; sixty-seven dollars to Leon Sternber-
ger in May or June, 1895; and one hundred and ninety-
eight dollars indebtedness of Baker to Weinstein, intended
to be canceled, and treated as a cash payment by Wein-
stein on said purchase. The commissioner also reported
that said Baker had no other property than that conveyed
to Weinstein; that the aggregate value of said property
was about eight hundred and seventy-two dollars and
ninety-one cents, and, in addition thereto, Weinstein re-
ceived the benefit of the liquor license for more than nine
months, the value of which was two hundred and seventy-
seven dollars and nine cents,—making the aggregate value
of all received by him from Baker about one thousand
one hundred and fifty dollars, for which he paid eight hun-
dred dollars, including one hundred and ninety-eight dol-
lars of pre-existing debts. To use the commissioner's
own language, the report says: "From the evidence and
from all surrounding circumstances in the case said Baker,
after the conveyance of June 1, 1895, had no property sub-
ject to pay his debts and meet his obligations, and, so far
as Baker is concerned, commissioner believes from the
evidence, exhibits, and his flagrant acts and doings, that
he deliberaetly set about to dispose of his property, both
real and personal, pocket the proceeds, and leave his credi-
tors with the bag to hold; and this he evidently did."
This report was excepted to by plaintiff, and the excep-
tions overruled except as to the commisisoner's fees
charged, and in other respects the report was confirmed,
the injunction dissolved, and the bill dismissed. From
this decree the plaintiff appealed.

The appellant claims that the court erred in sustaining
Weinstein's exceptions to the report of the first commis-

sioner (O'Brien), and in overruling plaintiff's exceptions to the report of the second commissioner (Strother), and in dissolving the injunction and dismissing the bill, because plaintiff had clearly shown himself entitled to the relief ·prayed for by the evidence and the findings of the commissioners based thereon. Can we sustain the action of the circuit court in dismissing the plaintiff's bill? When we refer to the rulings of this Court in like cases, we find, in *Gillespie* v. *Allen*, 37 W. Va. 675 (17 S. E. 184 Syl. point 2), the law thus stated: "Where the uncontroverted facts in the case show that a debtor, for the purpose of escaping a pursuing creditor, conveys his real estate to a purchaser, even for value, who has knowledge of the creditor's pursuit, and is aiding the debtor to escape the same, such purchaser will be held to have participated in the fraudulent purpose of his grantor, and his conveyance will be avoided as to such creditor." In the case under consideration, Eli Baker, on the 22d of June, 1895, conveyed away all of his property of every description, including his hotel, lot, furniture, and bar, to J. L. Weinstein, and received in payment therefor the cancellation of a debt owing Weinstein, together with the assumption and payment by said Weinstein of various debts owed by Baker to different parties, also two hundred and thirty-five dollars in cash; and, having disposed of all his property in this manner, said Baker, on July 2, 1895, wrote to the plaintiff Murdoch, expressing regret that it was impossible to meet his obligation to him falling due July 3d, and hoping in a short time to be on his feet, and guarantying to meet his obligation as promptly as possible, offering to pay protest fees, and asking to renew his note; and this letter was written a few days after Weintsein testifies he had paid him two hundred and thirty-five dollars in cash. Did Weinstein have a notice of the indebtedness of Eli Baker to Murdoch at the time he received the conveyance of this property? Joseph P. Hanks, the agent of Murdoch, in his deposition in answer to question 19: "Did you ever have a conversation with Eli Baker, in the presence of J. L. Weinstein, as to the payment of the account mentioned, as well as the payment of the note described in the bill of complaint, and, if so, state what it was?" says: "Yes, I had a con-

versation with those two men just previous to the time of the license being taken out in Weinstein's name, at Baker's Hotel at Thacker, in which I insisted on Baker's paying the account, or giving a negotiable note with Isaac Weinstein on the note with him. Isaac Weinstein had full knowledge of the existence of this debt." It appears that this conversation occurred some time in May, 1895, as shown by the deposition of J. L. Weinstein, who, when asked if he remembered the substance of the conversation, answered: "All I remember is that Hanks or Baker wanted me to endorse a note of Baker's for $130 or $132, given to Hanks, or Hanks' house. It was on 30 days' time. He wanted me to go on as security." Although Weinstein states that he remembers the conversation spoken of by Hanks, and that it occurred after he had purchased the property, when asked to fix the time of that conversation as accurately as he could he answered: "It was some time in May," when the evidence shows that the property was not conveyed to him until June 22, 1895, so that said Weinstein, at the time he took a conveyance of said property, not only knew that this large debt was owed by Baker to Murdoch, but that Murdoch was pressing him for a settlement. Murdoch held Baker's note for one hundred and eighty-three dollars and twenty cents, dated May 1st, and due July 3d. On the 3d of April he had sold him another bill, amounting to two hundred and forty-six dollars and thirty-five cents. He owed J. L. Weinstein and others. The brother of J. L. Weinstein had been allowing Baker to use his name in conducting his hotel bar, and, when pressed for debt by Murdoch, it was natural he should seek a solution of his pecuniary troubles by consulting J. L. Weinstein, who claims to have had some money; and the sale to said Weinstein was resolved upon. Out of the proceeds the debt of Weinstein was to be paid, and certain other creditors satisfied as preferred creditors. The receipt of the Pabst Brewing Company, filed with the deposition of said Wienstein, bears date July 25, 1895, three days after the conveyance was made, so that it is apparent that Baker had the utmost confidence that his friend and accomplice Weinstein would pay this portion of the purchase money for the hotel property, as he trusted he would

pay it after the deed was made and delivered. As to the fraudulent intent of Baker, there can be on doubt, when we read the professions of honesty contained in his letter to Murdoch of July 2, 1895, and he had sold and conveyed to Weinstein, not only his hotel and lot, but his furniture and bar fixtures, paying with the proceeds such debts as he saw proper to prefer, pocketing the surplus in cash, and leaving the State a few days afterwards.

In the case of *Reynolds' Adm'r* v. *Gawthorp's Heirs*, 37 W. Va. 3, (16 S. E. 364), this Court held: "While the burden of proving a deed fruadulent in fact as to creditors is upon the creditors, positive evidence of fraudulent intent is not required, but it may be deduced from the circumstances of the transaction and the relation and situation of the parties to it and to each other. Circumstantial evidence, if adequate to satisfy the court of such fraudulent intent, is sufficient, and often the only evidence obtainable;" and that: "Where the circumstances connected with a conveyance fraudulent as to the grantor plainly establish the complicity of the grantee in the fraudulent intent, it is not necessary to show, by direct and positive proof, notice to the grantee of such intent." In addition to the circumstances hereinbefore detailed tending to show notice on the part of Weinstein of the fraudulent intent of Baker in this transaction, we may notice that Weinstein, in his testimony, shows that he is fully cognizant of the amount and character of Baker's indebtedness, nearly all of which was contracted in buying supplies for his bar, which was carried on in the name of Moses Weinstein; that he assisted Baker in paying for his saloon license; and, with his brother in charge of the bar, in a little town like Thacker, it would be unreasonable to presume that such an amount of bar supplies could be purchased by Baker, and J. L. Weinstein be ignorant of the fact. As we have shown, he knew of the plaintiff's debt which had accrued in that manner; and when Eli Baker came to him to sell his entire property, including all his furniture, and proposed his paying for same by canceling a large debt of his own, by paying a small portion of Baker's creditors to the exclusion of others that stood on the same footing, and by paying the balance in cash, he must have known that

Baker would not have made this sweeping sale if he intended to remain at Thacker, and he must have known it was his intention to defraud his other creditors. So, in *Hart* v. *Sandy*, 39 W. Va. 644, (20 S. E. 665), this Court held that a creditor cannot purchase the goods of his debtor at a price in excess of his debt when he knows that the excess so paid such debtor is by the latter to be placed beyond the reach of his other creditors. Such purchaser is a participant in the fraud of his debtor, whether his purchase be to aid him or not. See *McVeagh* v. *Baxter*, 82 Mo. 518. On the question of notice, Bump, Fraud. Conv. 494, states the law thus: "The notice of the fraud need only be sufficient to put a man of ordinary prudence and experience in business transactions upon inquiry. * * * Whatever is sufficient to direct his attention to the prior rights and equities of creditors, and to enable him to ascertain their nature by inquiry, will operate as notice. When a purchaser has knowledge of any fact sufficient to put him on inquiry, he is presumed to have either made the inquiry, and ascertained the extent of the right that he may possibly prejudice, or to have been guilty of a degree of negligence fatal to the claim to be considered a *bona fide* purchaser. This notice may be derived from the statement of creditors or other parties. * * * It is not necessary that the grantee shall be one of the originators of the fraudulent scheme. * * * There is no difference between those who form the design and those who afterwards enter into it with a knowledge of its character, and aid in carrying it out." The circumstances shown by the testimony in this case clearly indicate that Weintsein had notice of the intention of Baker, and aided him in getting his property beyond the reach of the plaintiff and his other creditors; and under the ruling of this Court in *Gillispie* v. *Allen, supra*, the deed should be avoided as to the plaintiff's debt, set forth in his bill, and as to the claim set forth in the petition filed in this cause by the Blue Grass Liquor Company.

As to the interest of Hally Baker, wife of Eli, in said lot, it is charged in the bill that said Hally put no money into said property, and that, as to her, the deed was voluntary, and is void as to the creditors of Eli Baker. The

burden was on her to prove that she paid for said interest, and, in the absence of such  proof, the presumption is that her husband furnished the money to pay for it.   See *Rose* v. *Brown*, 11 W. Va. 122; *McMasters* v. *Edgar*, 22, W. Va. 673.   For these reasons the decree complained of must be reversed,  and the deed  from Eli Baker and Hally Baker, his wife,  to J. L. Weinstein, dated  June 1, 1895, is avoided as to  the claims  of J. N. Murdoch  set forth  in  plaintiff's bill, and as to the claim of the Blue Grass Liquor Company set  forth in  its petition, and  this cause is  remanded  for further  proceedings to be had therein according to the rules governing courts of equity.

*Reversed.*