## LLOYD v. BUNCE.

1. **Conveyance:** HUSBAND AND WIFE: SUBSEQUENT CREDITORS. A voluntary conveyance by the husband to a third party, and a like conveyance of the same by the grantee to the wife, are not void as to subsequent creditors of the husband, without other indicia of fraud.

2. **Deed:** IMPERFECT DESCRIPTION. By a deed which omits from the description the names of the town, county and state, the grantee acquires an equitable interest in the property sought to be conveyed.

3. **Statute of Limitations:** MINOR. The statute of limitations will not operate to bar a minor of his action for the recovery of realty.

4. **Tax Sale:** ASSIGNMENT: DEED. B. purchased land at a tax sale, and the certificate was made out in his name, but, failing to pay for it, P. advanced the money. Subsequently P. sold the certificate to G., and caused B. to assign his right therein to G. also. Before the assignment of certificate, B. joined his wife, who claimed the property under a sheriff's deed, in a conveyance to C.: *Held*, that the interest of B. in the tax certificate did not pass by the deed, but by the assignment.

5. ———: MORTGAGEE MAY REDEEM. A mortgagee has such an interest in property sold for taxes as entitles him to redeem.

*Appeal from Cerro Gordo Circuit Court.*

FRIDAY, DECEMBER 10.

ON the 28th day of April, 1871, the plaintiff, Julia R. Lloyd, filed in the Circuit Court of Cerro Gordo county her petition claiming that she is the owner and entitled to the

Lloyd v. Bunce.

immediate possession of lot number four, in block number seventeen, in Mason City, Cerro Gordo county, Iowa, per Paul Felts' plat.

On the 24th of May, 1872, William B. Ruggles, by Julia R. Lloyd, his next friend, filed in said court his petition, alleging that he is the owner of said lot, except 22 feet front by 80 feet deep out of the southeast corner, in virtue of the purchase of the same by his mother, Julia R. Ruggles, now Julia R. Lloyd, with his money, from John B. and Anna Long, and a conveyance thereof to his mother, and that she holds the title in trust for him.

This petition alleges that in the year 1863 said real estate was sold for delinquent taxes of previous years, and a treasurer's deed was executed to Martin Bumgardner, and that the real estate is now claimed and held by George L. Bunce, under said tax deed, by purchase since the execution thereof, and that the rents and profits are greatly in excess of all taxes due and the improvements made thereon.

The petition prays that the tax deed be set aside, and that the plaintiff have leave to redeem.

On the trial this plaintiff amended his petition, alleging that, in the deed from John B. and Anna Long to his mother, there was a mistake, in that it neglected to state the county, town and state in which the property is situated, and that since the last term of court, and immediately after the mistake was discovered, Julia R. Lloyd procured a correctional deed, for the purpose of correcting the mistake. The cases were consolidated.

The defendant filed in each case a special answer, alleging in substance that in February, 1863, the land in controversy was sold to Martin Bumgardner for delinquent taxes of preceding years, and the tax certificate was assigned to Jane E. Garner, who procured and recorded a treasurer's deed on the 20th of January, 1866, and that through several mesne conveyances the defendant is the owner by purchase from Tyler Blake, on the 15th day of October, 1867.

The defendant filed a separate answer to the petition of William B. Ruggles, alleging in substance that on the 15th

day of October, 1867, he purchased the lot in controversy, and the adjoining lot eight of Tyler Blake, for the sum of seven thousand dollars. That Blake was in the actual possession and claimed to be the owner of said lot. That defendant had no knowledge of any claim to said property by Julia R. Loyd or the plaintiff. That the record title was at the time of his purchase perfect and fair upon its face, and he had no knowledge of any defect therein. That the lot was sold at sheriff's sale on the 21st day of May, 1859, and that this defendant, and those claiming under said sheriff's sale, have been in the actual continued possession from May 2, 1860, to the present time.

Defendant also filed a general answer to both cases, in substance as follows:

That on the 15th day of April, 1857, John B. Long, being the owner of the lot in controversy, with intent to cheat and defraud his creditors and those who might become his creditors, conveyed it to George Brentner, who took the conveyance with full knowledge of the fraudulent purpose, and without paying any consideration, and on the next day conveyed the same to Anna Long, the wife of John B. Long, who took the conveyance with intent to assist her husband in covering up his property.

That on the 11th day of November, 1857, John B. Long became a surety on a stay of execution of a judgment of $107.00, rendered by a justice of the peace, and on the 11th day of February, 1858, the justice rendered judgment against him on this stay bond.

A transcript of this judgment was filed in the District Court of Cerro Gordo county, and on April 13, 1859, execution issued, under which the sheriff levied upon the lot in controversy, as the property of J. B. Long, and sold it to Jarvis S. Church, and issued to him a certificate of purchase on the 31st of May, 1859.

Church assigned the certificate of purchase to Caroline E. Bumgardner, who surrendered it to the sheriff and procured a sheriff's deed on the 23d of May, 1860.

That the lot in controversy was actually levied upon and

sold, but that the sheriff, in making return on the execution, and in the certificate of purchase, by mistake described the lot as number eight, instead of number four.

That Caroline E. Bumgardner took possession of the lot at the time she received the sheriff's deed, and that she and her grantees, and this defendant and his grantors, have been in actual possession ever since.

That Caroline E. Bumgardner was in actual possession from date of sheriff's deed until January 20, 1865, when she and her husband sold and conveyed by warranty deed to Spencer G. Bryant, who filed his deed for record on the same day.

That Bryant immediately took possession and occupied the property until 20th of November, 1865, when he conveyed an undivided half thereof to Tyler Blake, who immediately went into possession, and that they jointly held possession until April 2, 1866. On the 16th of April, 1866, Bryant and wife conveyed by warranty deed an undivided half of said property to Lewis Cole, who went into possession and held jointly with Blake until the 19th of July, 1866, when he conveyed his undivided half to Blake.

Blake went into possession of the whole lot, and made valuable improvements, and on the 15th of October, 1867, conveyed by warranty deed to the defendant, George L. Bunce, who immediately took possession and has occupied the premises ever since.

That the deed from the sheriff to Bumgardner was filed for record March 23, 1864, and that this defendant and Blake, Cole, Bryant and Bumgardner, at the time of their respective purchases, had no knowledge of the mistake made by the sheriff in describing the lot.

That said sheriff's deed, at some time between September 10, 1864, and January 20, 1865, as also the record thereof, was, by some person unknown to defendant, changed so as to correspond with the facts and properly describe the lot in question, and thereby made to describe the lot actually levied on and sold.

That defendant Blake, Bryant and Cole had no knowledge of the alteration in the deed and the record, and all of them

purchased relying upon the title of the said Caroline E. Bumgardner, and upon the deed and record thereof as the same now stands.

That plaintiff claims title by a quit claim deed from Anna Long, dated 31st of December, 1861, and took the deed with full knowledge of defendant's rights, and of the fraud of Long.

That plaintiff's deed was not filed for record until April 7, 1865, and that neither defendant nor his grantors had any knowledge thereof, nor of any claim of title to the lot at the time of their respective purchases.

The defendant prays that the deed from John B. Long and wife to George Brentner, and from Brentner and wife to Anna Long, and from Anna Long to plaintiff, be decreed fraudulent and void, that the sheriff's deed to Caroline E. Bumgardner be corrected, and that the title be confirmed in defendant.

The reply admits the conveyance of Long to Brentner, of Brentner to Anna Long, of Caroline E. Bumgardner to Bryant, of Bryant to Tyler Blake, of Bryant to Cole, of Cole to Blake, and of Blake to defendant, as alleged in the answer.

The plaintiff denies all the other allegations of the answer, and particularly the sheriff's deed, tax deed, and the alleged fraud.

On the trial of the cause of Julia R. Lloyd, the court decreed that George L. Bunce is the owner of the property in question, and that he acquired title by virtue of a tax sale and deed, and subsequent conveyances to him.

On the trial of the cause of William B. Ruggles, the court decreed that plaintiff is entitled to redeem two-thirds interest in said real estate. Both parties appeal.

*J. S. Stanberry* and *Brown, Stone & Sears* for appellant.

One encumbrancer cannot defeat the lien of another, by procuring a tax title upon the land bound by the lien of each. (*Finley v. Brown*, 22 Iowa, 538; *Stears v. Hollenbeck*, 38 Id., 550; *Porter v. Lafferty*, 33 Id., 254.) Any interest or right to the ownership of land, or to the possession or enjoyment of a

part of it, gives the right to redeem the whole. (*Rice v. Nelson*, 27 Iowa, 148; *Curl v. Watson*, 25 Id., 35; *Burton v. Hintrager*, 18 Id., 348; *Adams v. Beall*, 19 Id., 61.) A subsequent creditor cannot take advantage of a previous fraud of his debtor. (*Whitescarver v. Bonner*, 9 Iowa, 480.) When the levy of an execution upon real estate misdescribes the same, and the misdescription runs into the certificate of purchase and deed, equity will not enforce a parol promise of the judgment debtor to correct the deed. (*Butcher & Co. v. Buchanan*, 17 Iowa. 81.) One, to be a *bona fide* purchaser, must have purchased the legal title, and not be a purchaser without semblance of title. (Story's Eq. Jur., § 1502.) He must be a purchaser without notice of the prior incumbrance, for notice makes him come in fraudulently. *Willoughby v. Willoughby*, 1 T. R., 763.)

*Hartshorn & Flint*, for appellee.

Plaintiff must recover, if at all, upon the strength of her own title. (*Hurley v. Steele*, 24 Iowa, 429.) A deed which gives neither the town, county nor state in which the property is located, is void for uncertainty. (*Boyd v. Ellis*, 11 Iowa, 101.) Where the equities are equal, a court of equity will not interfere. (1 Story's Eq., § 64.) It will not interfere to correct a mistake against a bona fide purchaser for value without notice. (Id., § § 165, 108, 410, 436. *Wadsworth v. Wendell*, 5 Johns. Ch., 224.) A sheriff's deed will not be held void for a mistake in description, when it appears that the identical land in dispute was that sold by him. (*Hackworth v. Zollar*, 30 Iowa, 433; Rorer on Jud. Sales, § 659.) Irregularities and mistakes in the return of execution, notice, etc., will not avoid the sale as to third parties and bona fide purchasers. (*Cavender v. Heirs of Smith*, 1 Iowa, 306.) An alteration of a deed by a stranger does not affect its validity, or, when made subsequent to its execution, divest title. (*Lewis v. Payne*, 8 Cowen, 71; *Woods v. Hildebrand*, 2 Am. Rep., 513.) After a lapse of ten years, equity will not permit bona fide purchasers, without notice, to be disturbed on account of

irregularities. (*Burmeister v. Dewy*, 27 Iowa, 475.) A grantee who has paid no value will not be protected even if she have no notice of the fraud of her grantor. (*Preston v. Turner*, 36 Iowa, 671.) The grantor by warranty deed is bound to protect the land against delinquent taxes, existing at the time of conveyance. (*Lafferty v. Porter*, 33 Iowa, 254.) The disability of infancy cannot avail the infant, when the adverse possession commenced after his interest in the property accrued. (Tyler on Eject., §§ 929–30; *Carpenter v. Schermerhorn*, 2 Barb. Ch., 314.) To authorize redemption, a party must have some known legal estate, or some equitable estate, or lien by mortgage or judgment. (Blackw. on Tax Titles, 495; *Burton v. Hintrager, supra.*)

DAY, J.—I. On the 15th day of April, 1857, John B. Long and Anna, his wife, conveyed lot 4, block 17, Paul Felt's

1. CONVEY-
ANCE: hus-
band and
wife: subse-
quent credit-
ors.

plat of Mason City, the lot in controversy, with lots 4 and 5 and lot 1 in block 22, and lot 1 in block 21 to George Brentner, and on the 17th of April, 1857, George Brentner conveyed all of said property to Anna Long. Both conveyances were recorded on the 17th of April, 1857. They were voluntary, but the expressed consideration was $3,000.

It is claimed that this conveyance was fraudulent in fact, and that the property still remained liable for the subsequent debts of John B. Long.

It is proved that John B. Long, at the time of making the conveyance said that he would put that property into the hands of his wife, so that she would have something provided anything turned up. It does not appear but, at that time, Long had other property enough to pay his debts. Brentner testifies that he owed himself, and owed McCartney, $1400, and that he could not tell how much he owed at Cedar Falls and Dubuque. But, it is not at all probable that Brentner, to whom Long was indebted, would have become an instrument of placing his property in the hands of his wife for the purpose of defrauding creditors. The only reasonable sup-

position is that Brentner knew, or at least believed, that Long. had enough property besides to pay his debts.

The defendants introduced records of certain judgments against John B. Long, in the District Court of Cerro Gordo county. Ten of these judgments, amounting to $468.87, are upon debts existing at the time of the conveyance to Anna Long. These are satisfied upon execution, except as to the sum of $147.00.

The remainder of the judgments, amounting to $4106.92, are upon debts contracted subsequently to the conveyance to Anna Long. Of this amount there. has been satisfied, upon execution and foreclosure of mortgage, $2,724.33. Part of this sum was satisfied by a conveyance of a portion of the property transferred to Anna Long, but, after making due allowance for this, it seems that debts were contracted and paid, after the conveyance to Anna, very largely in excess of all that John B. is shown to have been owing at that time.

For aught that appears, John B. Long, at the time of the conveyance to his wife, had property remaining abundantly sufficient to pay all his debts, and the evidence tends very strongly to make that fact affirmatively appear.

The defendant has not shown such a state of facts as would justify the setting aside of the conveyance as fraudulent as to an existing, much less a subsequent, creditor.

II. On June 21, 1857, the plaintiff, Julia R. Lloyd, then Julia R. Ruggles, loaned to John B. Long $1170, and took a mortgage to secure the same. Upon the fore-closure of the mortgage Anna Long conveyed to Julia R. Ruggles, in satisfaction of the judgment, the lot in controversy.

2. DEED: imperfect description.

This deed is a quit-claim, is dated December 30, 1861, and was filed for record April 7, 1865. It describes the lot and. block but omits to state the town, county or state. The evidence shows clearly that the intention was to convey the lot in controversy, and through the contract and conveyance Julia R. Ruggles acquired the equitable title thereto. On the 18th of July, 1874, and during the pendency of this action, Anna Long executed to Julia R. Lloyd another quit-claim deed,

containing a correct description, for the purpose of correcting the mistake.

III. On the 11th of November, 1857, Henry Anderson obtained a judgment against W. W. Stackhouse before a justice of the peace for $107.07, and John B. Long became surety on stay of execution.

On the 11th of February, 1858, judgment was rendered by the justice against Long on the stay bond, and afterward a transcript was filed in the office of the clerk of the District Court of Cerro Gordo county, and on the 13th of April, 1859, execution issued, and on the 31st of May, 1859, the property in controversy was sold thereunder to one Jarvis S. Church. In the return upon the execution, the notice of sale, and the sheriff's deed, by mistake the property was described as lot 8, instead of lot 4. Church assigned the certificate of purchase to Caroline E. Bumgardner, and on the 23rd of May, 1860, she procured a sheriff's deed.

On the 26th of January, 1865, Caroline E. Bumgardner and her husband conveyed by warranty deed the lot to Spencer G. Bryant, which deed was recorded on the same day. November 20, 1865, Bryant conveyed one-half the premises to Tyler Blake. April 16, 1866, Bryant conveyed the other half to one Cole. July 19, 1866, Cole conveyed his half to Blake. October 15, 1867, Blake conveyed to the defendant, George L. Bunce. Under this conveyance defendant claims the property. It will be seen that his title is based upon a claimed sheriff's sale of the property under a judgment against John B. Long. Before this judgment was recovered the property had been conveyed to Anna Long, and the conveyance, as we have seen, is not shown to be fraudulent. The property was not liable to the judgment, and the sheriff's sale vested no rights in the purchaser. Hence it becomes unnecessary to consider the effect of the mistake in the return, notice and deed, and the subsequent alteration of the deed and record.

IV. Defendant, however, claims that the sheriff's sale at least gave color of title, and that Caroline E. Bumgardner immediately went into possession of the premises, and that

she and her grantees have been in continued possession to the present time, and that the action of plaintiff is barred by the statute of limitations.

The action of Julia R. Lloyd was commenced on the 28th day of April, 1871.

We are satisfied that the decided preponderance of the testimony is that Caroline E. Bumgardner did not take posses-

3. STATUTE OF LIMITATIONS: minor. sion until in the spring or summer of 1862, less than ten years before the commencement of the action. The plea of the statute of limitations is not sustained as to the plaintiff, Julia R. Lloyd. And, as will be hereafter seen, the plaintiff, William B. Ruggles, is a minor, and he acquired an interest in the property when it was conveyed to his mother, December 30, 1861, before possession was taken of the property. Therefore the statute of limitations does not bar his action.

V. The deed of Anna Long to Julia R. Lloyd was not recorded until April 7, 1865, and when recorded it was so defective in description as not to be notice to a subsequent *bona fide* purchaser. Bryant purchased from Caroline E. Bumgardner on the 20th of January, 1865. Defendant insists that the title vested in him absolutely, he being an innocent purchaser without notice, and that this title vested in his grantees even if they had notice. This would all be very well if Bryant derived his title under Anna Long. But all his title is derived from John B. Long, under the sheriff's sale. Long had no title and Bryant acquired none.

VI. Nothing remains to be considered but the tax title. On the 23d of May, 1860, Caroline E. Bumgardner claims to have acquired title to the lot in controversy through the sheriff's deed. In 1863 this lot was sold for the delinquent taxes of 1856, 1857, 1858, 1859 and 1860.

Martin Bumgardner bought the land at the tax sale, but could not pay for it. The certificate of purchase was made

4. TAX SALE: assignment: deed. out in his name and lay in the treasurer's office for some time, when H. G. Parker furnished money and paid for it. Afterwards Parker sold the certificate of purchase to Jane E. Garner, and had Bumgardner assign

it to her.   The assignment was not made until September 16, 1865, and a treasurer's deed was made to Jane E. Garner on the 20th of February, 1866.

Before the assignment of the certificate of purchase, to-wit: on the 20th day of January, 1865, Caroline E. Bumgardner and her husband, by warranty deed, conveyed the property in controversy to Spencer G. Bryant, and he caused his deed to be recorded on the same day.   It is claimed by plaintiff that, as Martin Bumgardner joined in the conveyance with covenants of warranty to Bryant, he is estopped from setting up any interest acquired through the certificate of purchase, and that, as it was assigned after Bryant's deed was recorded, the assignee and the subsequent grantees took no higher title than Bumgardner held.   If Bumgardner ever in fact owned the certificate of purchase, the position would probably be correct.   But he never paid for the certificate of purchase, and never owned it in fact.   It was made out in his name, but the purchase money was paid by Parker, who sold to Garner. All that Bumgardner seems to have had to do with it was merely to assign to Jane E. Garner.

And, as no objection is made to the validity of the sale, or the regularity of the proceedings, Jane E. Garner, by the treasurer's deed which was afterward made to her, acquired a valid tax title to the property.

On the 22d of March, 1866, Jane E. Garner conveyed, by quit-claim, the lot in controversy, to Spencer G. Bryant, with the exception of 22 feet front by 80 feet back, in the southeast corner thereof.   This title, by the subsequent conveyances, vested in the defendant, George L. Bunce, and it is conclusive against the right of the plaintff, Julia R. Lloyd.

VII.   The evidence shows that $1,000 of the loan which was made to John B. Long, on account of which the lot in controversy was conveyed to Julia R. Ruggles, was derived from a policy of insurance on the life of the father of William Ruggles, who died in 1856, leaving no debts, and William his only child.   No administrator of the estate nor guardian of William was ever appointed.

The mother of William made the loan, and took the conveyance for his benefit.

At the time of the tax sale he was, and now is, a minor, and he claims the right to redeem from the tax sale.

The court below granted him the right to redeem to the extent of two-thirds the value of the lot.

We are inclined to think the minor is entitled to redeem the whole lot. He has the right, at his election, when he attains his majority, to treat the conveyance to his mother as a mere security for his money which she loaned. In that event, he would not be a tenant in common with his mother of the lot, but he would be in the position of one holding a mortgage upon the entire lot to secure a debt. That such an interest would entitle him to redeem to the extent of that interest, see *Burton v. Hintrager*, 18 Iowa, 348. The case does not fall within the principle of *Jacobs v. Porter*, 34 Iowa, 341, which involved the rights of tenants in common. See, also, *Rice v. Nelson*, 27 Iowa, 148.

5. ——: mortgagee may redeem.

Upon the appeal of the plaintiff, William Ruggles, the judgment is

REVERSED.