# WHEELING

CROTTY *v.* EFFLER *et al.*

Submitted February 20, 1906.    Decided June 12, 1906.

1.  FRAUDS, STATUTE OF—*Sale of Land—Sufficiency of Memorandum.*

     The following memorandum in writing of a contract for the sale of real estate: "Received of Julia Crotty One Hundred Dollars $100 in cash as first payment *one* a *pice* of Land that I have *sole* to her this day for one hundred dollars per acre. It being a *pice* of land *sole* to John Effler by the Welch land improvement 5 acres more or less and that joins the Crotty land and the balance of the (*bal. of the* money $100 per acre is to be paid when it is surveyed & deed *maid* to the said Crotty Feb. 5, 1903. Barbara Effler," is sufficient under the statute of frauds, in a suit brought for the specific performance of the contract by Julia Crotty against Barbara Effler. (p. 260.)

2.  SPECIFIC PERFORMANCE—*Misrepresentations.*

Misrepresentations, to constitute a defense in a suit for the specific performance of a contract must have been relied on by the party with whom the contract was made. Unless an untrue statement is believed and acted on, it occasions no legal injury. (p. 265.)

Appeal from Circuit Court, McDowell County.

Bill by Julia Crotty against Barbara Effler and others. Decree for plaintiff, and defendants appeal.

*Affirmed.*

BELL & LITZ, for appellants.

DAVID E. JOHNSTON, for appellee.

COX, JUDGE:

In this suit in equity, instituted by Mrs. Julia Crotty, plaintiff, against Mrs. Barbara Effler, John H. Jarvis, R. L. Johnson, Stephen Effler and Isaac Belcher, defendants, in the circuit court of McDowell county, the plaintiff seeks to enforce the specific performance of an alleged contract for the sale of real estate against the defendant Mrs. Effler, and to cancel a deed for the same real estate made by her to the defendant John H. Jarvis, as being in fraud of the plaintiff's rights.

The plaintiff by her bill alleges, in substance, that on the 5th day of February, 1903, she, through her agent, John Crotty, purchased from the defendant Barbara Effler a piece of land lying in the town of Welch, containing 5 acres more or less, at the price of $100.00 per acre, taking from her a receipt showing that the sum of $100.00 had been paid on said land, and showing also the location thereof; that on the 10th day of February, 1903, only five days after the sale of said land to the plaintiff, the defendant Barbara Effler, in fraud of the rights of the plaintiff, sold and conveyed the said land to the defendant John H. Jarvis for the sum of $700.00; that the defendant John H. Jarvis purchased said land with full knowledge of the fact that the plaintiff had already purchased the same; that the purchase by John H. Jarvis was made as the result of a conspiracy on the part of the defendants, R. L. Johnson, Stephen Effler, Isaac Belcher, John H. Jarvis and Barbara Effler, to defraud the plaintiff out of the land so purchased by her; that John H. Jarvis was not in a financial condition to make said purchase, and that the purchase money

was furnished by Stephen Effler, R. L. Johnson and Isaac Belcher, or by one or more of them. The plaintiff by her bill offers compliance with the contract on her part, and to pay the residue of the purchase money, and alleges other matter not necessary to mention. The plaintiff exhibits with her bill an office copy of the deed from Mrs. Effler to John C. Jarvis, and also a copy of a receipt or memorandum signed Mrs. Effler, which is relied on by the plaintiff as the written evidence of the contract of sale to her and of the payment of $100.00 thereon by her. The receipt or memorandum is in the words and figures following:

"Received of Julia Crotty One Hundred Dollars $100 in cash in payment *one* a *pice* of Land that I have *sole* to her for one hundred dollars per acre. It being a *pice* I *sole* to John Effler on the Welch land improvements more or less and it joins the Crotty land and the ... of the (*bal. of the money* $100 per acre is to be paid ... it is surveyed & the ... *aid* to the said Crotty Feb. 5, 1... Barbara Effler."

By amended bill, the plaintiff alleges, in addition to the statements of her original bill, substantially that the land in her original bill and purchased by her is the same which was conveyed to John Effler by the Welch Land Company, a corporation organized under the laws of the State of West Virginia, and the same land which was on the ... day of October, 19.. conveyed by John Effler to the defendant Barbara Effler; that said land lies within the limits of the town of Welch, McDowell county, W. Va. The plaintiff exhibits with her amended bill an office copy of a deed from Welch Land Improvement Company, a corporation under the laws of the State of West Virginia, to John Effler, dated the 23rd of November 1894, for 5 acres of land more or less in McDowell ... described by metes and bounds, and also an office copy of a deed from John Effler to Barbara Effler for the same land ... acres more or less in McDowell county, described by metes and bounds.

By their answers, the defendants substantially deny all the material allegations of the bill and amended bill, except the allegation that Mrs. Effler signed the receipt or memorandum exhibited with the plaintiff's bill and which will hereafter be referred to as the "contract" between the plaintiff and the

defendant, and except the allegation that Mrs. Effler received the $100.00 mentioned in the contract, and except the allegation that Mrs. Effler sold and conveyed said land on the 10th day of February, 1903, to John H. Jarvis for $700.00. Mrs. Effler, by her answer, makes certain allegations intended to charge the plaintiff with fraud in the procurement of the contract of sale to her, and offers to return the $100.00 received thereon.

The defendant Jarvis denies all allegations of knowledge or notice of the contract of sale to the plaintiff, or of fraud or fraudulent intent, at the time the land was purchased by and conveyed to him. After a demurrer to the amended bill had been overruled, and the plaintiff had replied generally to the answers, and many depositions had been taken, the court, upon final hearing, entered a decree enforcing the specific performance of the contract of sale, and directing a survey and deed accordingly, upon payment of the balance of the purchase money, and dismissing the bill as to Stephen Effler, Isaac Belcher and R. L. Johnson. From this decree Mrs. Effler and John H. Jarvis appeal.

The determination of this appeal requires an answer to each of the following questions: First: Is the contract sought to be specifically enforced sufficient under the statute of frauds? Second: Is the plaintiff in a position to compel the specific performance of the contract? Third: Is the defendant Jarvis an innocent purchaser for a valuable consideration? An answer to either of these questions adverse to the plaintiff's contention bars her of relief. We shall consider these questions, in the light of the evidence and facts appearing, in the order stated.

First: Is the contract sought to be specifically enforced sufficient under the statute of frauds? It is contended that this contract, signed by the party against whom it is sought to be enforced, is insufficient under the statute of frauds, because of uncertainty in the description of the land agreed to be sold. It will be observed that this contract contains the following language: "It being a *pice* of land *sole* to John Effler by the Welch land improvement 5 acres more or less and that joins the Crotty land." No state, county, district or town is mentioned.

"Every agreement required by the statute of frauds must

be certain in itself, or capable of being made so by reference to something else whereby the terms can be ascertained with reasonable certainty.   And in contracts for the sale of lands, the court may go outside of the writing for the purpose of identifying and ascertaining the land sold, where general words of description capable of being made certain are used in the writing."   *White* v. *Core*, 20 W. Va. 272.   In that case, the following memorandum of a contract for the sale of real estate was held sufficient:

"Received of William White for Samuel White, one hundred dollars, on land purchased of Core; and said Core agrees to divide the said land, and let the said Samuel White have the lower half of said land for nine hundred dollars, this June 13, 1876.   W. G. H. Core."

That contract was specifically enforced against Core, although the description did not mention the state, county or district in which the land was located.   Likewise, the contract in the case of *Snodgrass* v. *Wolf*, 11 W. Va. 158, which omitted from the description of the land agreed to be sold the district, county and state in which it was located, was regarded as sufficient.   In *Holley's Exors.* v. *Curry*, 58 W. Va. 70 (51 S. E. 135)· a writing constituting an equitable mortgage was held not to be void on its face for uncertainty in the description of the real estate intended to be charged thereby, although the description omitted the county and state in which such real estate was located.   In the opinion in that case, it is said:   "It may be laid down generally that great liberality is allowed in the matter of description.   In description, that is certain which can be made certain.   A deed will not be declared void for uncertainty if it is possible, by any reasonable rules of construction, to ascertain from the description, aided by extrinsic evidence, what property it is intended to convey.   The office of description in a deed or other writing is not to identify the land, but to furnish means of identification.   *Simpkins* v. *White*, 43 W. Na. 125; *Blake* v. *Doherty*, 5 Wheat. (U. S.) 359; *Cox* v. *Hart*, 145 U. S. 376; 2 Devlin on Deeds (2d Ed.) section 1012, note 1;  Jones on Real Prop. section 323; Brewster on Conveyancing, section 75."   *   *   *   "Descriptions omitting town, county or state where the property is situated have been held sufficient, where the deed or writing provides other means of identifica-

tion. *Hawkins* v. *Hudson*, 45 Ala. 482; *Webb* v. *Mullins*, 78 Ala. 111; *Garden City Sand Co.* v. *Miller*, 157 Ill. 225; *Loyd* v. *Bunce*, 41 Ia. 660; *Mee* v. *Benedict*, 98 Mich. 260; *Norfleet* v. *Russell*, 64 Mo. 176; 13 Cyc. 549; *McCullough* v. *Olds*, 108 Cal. 529." See also *Tewksbury* v. *Howard*, 138 Ind. 103; *Robeson* v. *Barber*, 3 N. J. Eq. 60. Although the state, county and district may be omitted from the description, it is essential that the land agreed to be sold be so described as to be capable of being distinguished from other land. It is not necessary that the contract should contain such a description as, without the aid of extrinsic testimony, to ascertain precisely what was agreed to be sold. We are clearly of the opinion that the contract in controversy is not void on its face for uncertainty in the description of the land agreed to be sold. It describes the land as a *"pice* of land *sole* to John Effler by the Welch land improvement," "5 acres more or less," "that joins the Crotty land." We cannot say that, by the use of these means furnished by the contract, the land agreed to be sold may not be identified. See *Atwood* v. *Cobb*, 16 Pick. (Mass.) 227; *Newman* v. *Iron Co.*, 80 Fed. Rep. 228; *Felty* v. *Calhoun*, 139 Pa. St. 378.

It is contended that the deed from Welch Land Improvement Company to John Effler, a copy of which is filed with the amended bill, is not identified by the following reference in the contract—"It being a *pice* of land *sole* to John Effler by the Welch land improvement 5 acres more or less"—because the contract uses the word *"sole,"* instead of the word "conveyed" or other word of like meaning, and because the contract uses the words "Welch land improvement," instead of the words "Welch Land Improvement Company," the full corporate name of the grantor in the deed. It is also contended that the deed cannot be considered, because the amended bill, in the description thereof, uses the words "Welch Land Company," instead of the full corporate name aforesaid. These contentions seem to be technical, rather than substantial. A court of equity seeks substance rather than form. Of course no attention will be paid to bad spelling, if it is evident what was intended. It is plainly evident that the word *"sole"* as used was intended for, and to mean the same as, the word "sold." "A sale may be defined as a contract founded on a money consideration, by which the abso-

lute or general property in the subject of the sale is transferred from the seller to the buyer." 24 Am. & Eng. Enc, Law 1022. The words "sale" and "conveyance," when applied to real estate, are, in common parlance, in judicial decisions, and by law writers, often used interchangeably. It seems, therefore, that a deed of conveyance of real estate answers a reference to a sale of real estate, especially when the reference is used by persons unlearned in the law in a contract of sale of real estate, and the reference is otherwise substantially accurate. The omission of the word "company" in the contract, and the word "improvement" in the amended bill, in the statement of the name of the corporation intended, we think is likewise immaterial. Enough of the corporate name in each case is stated to show what corporation was intended, and to distinguish it from all others. This renders the statements sufficient in that regard. *Society* v. *Digges*, 6 Rand. 165; *First Nat. Bank* v. *Huntington Distilling Co.*, 41 W. Va. 530. It clearly appears from the parol evidence in this case that, by the use of the description and the means of identification furnished by the contract, the land agreed to be sold can be identified. We quote from the evidence of Mr. Litz, a witness for defendants, as follows: "Q. Mr. Litz, this is a suit brought by Julia Crotty against Barbara Effler, the purpose of which is to enforce an alleged contract by which Barbara Effler agreed to convey to Julia Crotty for $500 a tract of land lying in Welch, containing 5 acres more or less, and which was conveyed to one John Effler by the Welch Land Improvement Company. Are you acquainted with this tract of land, and can you estimate the value of it in February, 1903? A. Yes, I think I know the tract of land. Yes, I could estimate the value." This witness then estimates the value of that tract of land. Other parol evidence also removes all difficulty upon the question of identity. The contract appears to be entirely sufficient under the statute of frauds.

Second: Is the plaintiff in a position to compel the specific performance of the contract? It is claimed that the contract was procured by fraud and unfair dealing on the part of John Crotty, as agent of the plaintiff, and that the plaintiff is thereby estopped from compelling the specific performance of the contract. The contract was negotiated and concluded

by John Crotty, plaintiff's son, as her agent. There is no intimation of fraud on the part of the plaintiff personally. Only those contracts which are fair, just and equitable will be specifically enforced. It requires much less strength of case on the part of a defendant to resist a bill to perform a contract, than it does on the part of the plaintiff to maintain a bill to enforce specific performance. 2 Minor's Insts. 873; *Harrison* v. *Harrison,* 36 W. Va. 556; *Eclipse Oil Co.* v. *South Penn Oil Co.,* 47 W. Va. 84. The defendant Barbara Effler relies on misrepresentations by John Crotty, during the negotiations leading up to the contract, to defeat specific performance. The evidence bearing upon such misrepresentations is not without actual conflict. Chief among the misrepresentations claimed is that John Crotty said in substance that he believed he would sell his land at the price of $100.00 per acre, when in fact he knew that his land was worth and that he could get a much greater price. Other misrepresentations of less importance are claimed. It does not appear from the whole evidence that these alleged misrepresentations were so relied on by Barbara Effler, or were of such character, as to prevent specific performance. It is true that, in one part of her evidence, Mrs. Effler testifies that she would not have closed this trade if John Crotty had not made the statements claimed to be misrepresentations. Mrs. Effler also testifies that, before this contract was signed and delivered, she sent for Mr. A. C. Brewster. He was present when the contract was signed and delivered. In another part of her evidence, Mrs. Effler, after detailing the negotiations with John Crotty leading up to the contract, and the alleged misrepresentations, testifies as follows: "Q. After you told Mr. Crotty that you did not want to sell the land, why or what was the reason that you changed your mind about this and did give him a receipt for a payment on this land? A. Well, I sent for Mr. Brewster, and on his say so; he said it would be all right for me to sign it. Q. Did you simply sign the writing because Mr. Brewster said so, or did he advise you to sell the land? A. I asked him if it would be all right for me to sign it, and he said he thought it would." Mr. Brewster testifies in substance that he was present when the contract was closed; that he was handed the contract, and looked over it, and told Mrs. Effler that he

thought the writing was all right if she wanted to sell; and that she said she believed she would sell, and asked him what he thought, and that he told her it looked like a pretty good price. 'This evidence would clearly indicate that Mrs. Effler did not rely on any misrepresentations (if made) by John Crotty. We are aware an effort was made to explain that the advice of Mr. Brewster was limited to the validity of the contract; but the evidence does not sustain that view. Misrepresentations, to constitute a defense in a suit for specific performance of a contract, must have been relied on by the party with whom the contract was made. Unless an untrue statement is believed and acted on, it occasions no legal injury. 2 Pom. Eq. Jur. section 890; Pom. Spec. Per. sections 217-218.

It is shown that this contract of sale was the first transaction of this character ever engaged in by Mrs. Effler, but her mental capacity to make the contract is unquestioned. Courts cannot refuse the specific performance of the first contract made by a party competent to contract, simply because it is the first.

It is insisted that the consideration was inadequate. According to the evidence, including the fact that Mrs. Effler five days after the contract was made sold and conveyed the same land to defendant Jarvis at an advance in price of only about $200.00, the consideration is not so grossly inadequate as alone to amount to proof of fraud. Mere inadequacy, falling short of being so gross as to amount to proof of fraud, will not of itself prevent specific performance. See *Erwin* v. *Parkham*, 12 How. (U. S.) 197; *Cathcart* v. *Robinson*, 5 Pet. (U. S.) 264; 26 Am. Eng. Enc. Law 26-27; *Hale* v. *Wilkinson*, 21 Grat. (Va.) 75; *Pennybacker* v. *Laidley*, 33 W. Va. 640; *Whittaker* v. *Improvement Co.*, 34 W. Va. 223. Under the facts appearing, we cannot disturb the finding of the lower court that the plaintiff is not precluded, by fraudulent conduct or representations, from compelling the specific performance of the contract.

Third: Is the defendant Jarvis an innocent purchaser for a valuable consideration? The evidence shows that Jarvis paid a valuable consideration; but upon the question of the innocence of his purchase there is decided conflict. One witness, John Hartwell, testifies to a conversation had with

defendant Jarvis previous to the sale and conveyance to him,. in which he disclosed positive knowledge of the Crotty sale and an intent to defraud. An effort was made to impeach this witness, by proving that he had a bad reputation for truth and veracity, which effort, when all the evidence on the question is considered, must be regarded as unsuccessful. The evidence of other witnesses tends to sustain the theory of notice or knowledge. Jarvis and Mrs. Effler deny that Jarvis had notice. In determining this conflict of evidence, we must presume the correctness of the decree of the lower court, and give proper weight to the undisputed facts and circumstances. Where the facts and circumstances connected with a fraudulent conveyance necessarily establish complicity of the grantee in the fraudulent intent, it is not necessary by direct proof to show notice of such intent to the grantee. *Core* v. *Cunningham*, 26 W. Va. 206; *Reynolds* v. *Gawthrop*, 37 W. Va. 3; *Murdock* v. *Baker*, 46 W. Va. 78. When all the· facts and circumstances are invoked, they clearly point to the fact that Jarvis, at the time he made his purchase and accepted his deed, had notice and knowledge of the Crotty contract of sale and of his grantor's fraudulent intent. The sale to Jarvis was only five days after the contract of sale to plaintiff. Jarvis is a brother-in-law of Mrs. Effler. Mrs. Effler testifies that the sale to Crotty was her first important business transaction. The home of Jarvis was in Tazewell county Va., a considerable distance from the home of Mrs. Effler in Welch, McDowell county. Jarvis testifies that he left his home in Tazewell county, and came to see Mrs. Effler at Welch, for the purpose of buying, and did buy, the land in controversy. Both he and Mrs. Effler testify that the consideration, $700.00, was paid in cash. He testifies that he did not have all of this amount when he left home; that he might have had $100.00 or less when he started from home. He was asked where he obtained the residue of the $700.00, and replied: "I got the money honorably, and am responsible for all the debts I owe;" but he did not disclose where he obtained such residue. Mrs. Effler, when asked why she did not tell Jarvis that she had already made a contract for the sale of this land, says: "Because I did not have to." Is it probable that this brother-in-law left his home in Virginia, and came to the home of

Mrs. Effler to buy this land, and that they talked and nego-
tiated about this land, which she had only five days before
agreed to sell to plaintiff (it being her first important business
transaction), and that she made no reference to the fact of
her previous contract of sale with the plaintiff? This is pos-
sible, but not probable. Other circumstances might be de-
tailed tending to show notice on the part of Jarvis. All the
circumstances and reasonable inferences point to notice on
his part. We unhesitatingly agree with the decision of the
lower court in its determination of the question of notice.

We have not discussed the demurrer to the amended bill
separately, deeming it in all respects sufficient in law.

After carefully examining the whole record, we are of the
opinion that the decree complained of, entered by the circuit
court of McDowell county, should be affirmed.

*Affirmed.*