# CHARLESTON.

Robert MacQuoid v. West Virginia Newspaper Publishing Company

(No. 6102)

Submitted January 11, 1928.    Decided January 17, 1928.

1.    Corporations—*Contract Entered Into by Corporation Under Assumed Name May be Enforced by Either of Parties; in Enforcing Contract Entered Into by Corporation Under Assumed Name, Its Identity May be Established by Ordinary Method of Proof.*

A contract entered into by a corporation under an assumed

name may be enforced by either of the parties, and the
identity of the company established by the ordinary methods
of proof.   (p. 23.)

(Corporations, 14 C. J. § 371.)

2.   Frauds, Statute of—Novation—*Assent to and Acceptance
of Terms of Novation of Contract Need Not Always be in
Writing; Assent to and Acceptance of Terms of Novation
of Contract May be Implied From Facts and Circumstances
and Parties' Conduct; if Contract or Agreement of Nova-
tion is Not Capable of Performance Within Year From
Time Thereof, it Must be Written to Comply With Statute
of Frauds (Code, c. 98, § 1, par. 7).*

While assent to and acceptance of the terms of novation of
a contract need not always be in writing, and may be implied
from the facts and circumstances surrounding the transaction
and the conduct of the parties thereafter, yet if the contract
or agreement is one not capable of performance within a year
from the time of the alleged novation, it comes within the
statute of frauds, section 1 of chapter 98 of the Code, pro-
viding that no action shall be brought upon any agreement
that is not to be performed within a year, unless the agree-
ment or some memorandum or note thereof be in writing and
signed by the party to be charged thereby or his agent.
(p. 24.)

(Frauds, Statute of, 27 C. J. §§ 38 [Anno], 88 [Anno]; Nova-
tion, 29 Cyc. p. 1132.)

(Note:  Parenthetical references by Editors, C. J.—Cyc. Not
part of syllabi.)

Error to Circuit Court, Monongalia County.

Action by Robert MacQuoid against the West Virginia
Newspaper Publishing Company.   Judgment for defendant,
and plaintiff brings error.

*Affirmed.*

*Donley & Hatfield* and *Wm. S. John,* for plaintiff in error.
*Terence D. Steward,* for defendant in error.

Miller, President:

By this action the plaintiff sought to recover damages under
an alleged contract with the defendant, because of defendant's
termination of the contract before the expiration thereof.  The
trial court excluded plaintiff's evidence and directed a verdict
for the defendant.

From the evidence offered it appears that in February, 1920, the plaintiff entered into the following contract with The Morgantown Post Company:

"We, The Morgantown Post Company, publishers of The Morgantown W. Va. Post, hereby appoint Robert MacQuoid our national advertising representative, with offices in New York and Chicago, for a term of Three Years, beginning January 1st, 1920, at a weekly salary of $15, payable every Saturday and mailed to said Robert MacQuoid, New York City, every Saturday.

"This agreement can be cancelled or renewed at the end of Three Years by the present owners or the future owners of the Morgantown Post Company, or its successors, by a mutual arrangement satisfactory to both parties.

> MORGANTOWN POST W. VA.
> R. G. HESS, *Mgr.*

Witness J. H. HAYES
Morgantown, W. Va., February 28, 1920.

Accepted ROBERT MacQUOID
New York, March 1st, 1920."

This contract was later renewed by endorsement as follows:

"January 1st, 1923.

The above agreement is continued for another three years, under the same terms and conditions as above stated.

> MORGANTOWN POST COMPANY
> By GEO. B. SHORT, *Mgr.*

Witness MARIE E. TROPF

Accepted ROBERT MacQUOID
March 7th, 1923."

The trial court refused to permit plaintiff to introduce in evidence the written contract and renewal above quoted, or any evidence of the execution of the same, on the ground that the signature thereto, "Morgantown Post W. Va., R. G. Hess, Mgr.," is not that of The Morgantown Post Company, the party named in the body of the writing, and that therefore the paper does not constitute a binding contract between

the parties named therein.   It will be noted that the renewal
is signed: "Morgantown Post Company, By Geo. B. Short,
Mgr."   And it seems that the parties signing the original
paper and the renewal thereof had authority to contract for
the company.   There appears to be no question that the con-
tract pleaded and offered in evidence was duly executed by
the parties named, and that it was fully carried out while
the Morgantown Post Company owned and operated the Mor-
gantown Post, a daily newspaper.   Plaintiff offered to prove
that the company usually carried on its correspondence and
made contracts in the name of "The Morgantown Post" or
"Morgantown Post."

In *Marmet Company* v. *Archibald*, 37 W. Va. 778, this
court held: "A contract entered into by a corporation under
an assumed name may be enforced by either of the parties,
and the identity of the company may be established by the
ordinary methods of proof."   See, also *National Bank* v.
*Distilling Company*, 41 W. Va. 531; *Board of Education* v.
*Trustees, Etc.*, 78 W. Va. 445; 3 Fletcher Enc. Corp. Sec.
1456.   We are of opinion that the trial court erred in not
permitting the plaintiff to introduce evidence to prove due
execution of the contract relied on, for the purpose of en-
abling him to show, if possible, that defendant assumed the
obligations of the original party, the Morgantown Post Com-
pany.

The declaration alleges that November 10, 1923, after the
renewal of the written contract relied on to establish liability
on the part of the defendant to this action, "The said Mor-
gantown Post Company went out of business and the de-
fendant West Virginia Newspaper Publishing Company took
over and became and ever since has been the owner and pub-
lisher of the said The Morgantown Post, and thereafter,
to-wit, on the day and year last aforesaid, and on divers other
days and times and from said day and year until this time,
approved, assumed and adopted the said agreement in writing
and renewal thereof, and also in consideration that the plain-
tiff, at the special instance and request of the said defendant,
has then and there undertaken and promised the said de-
fendant to perform and fulfill the same in all things on his

part and behalf to be performed and fulfilled, the plaintiff continued to perform and fulfill the work and services thereby required on his part to be done and performed, and has been at all times ready, willing and able so to do for a long space of time, to-wit, from the said 10th day of November, 1923, until the expiration of the said renewal term of three years on the 1st day of January, 1926''; etc. It is further alleged that plaintiff continued to perform the services provided for in the written contract for a term of thirty-seven weeks after the defendant took over the publication of the Morgantown Post, after which time the defendant, without the consent of plaintiff, terminated the contract and dismissed him from its service.

Plaintiff seeks to recover on the theory of novation, that the defendant assumed the liabilities of the Morgantown Post Company under the original contract. No evidence was introduced to prove assent to an acceptance of the terms of novation by any writing signed by the parties; and the plaintiff, so far as the record shows, depends on the subsequent acts of the defendant to establish liability. It is true that novation may be implied from the facts and circumstances attending the transaction and the conduct of the parties thereafter. *Chenoweth* v. *National Building Association*, 59 W. Va. 653. But paragraph seven of our statute of frauds, section .1, chapter 98 of the Code, provides that no action shall be brought upon any agreement that is not to be performed within a year, unless the agreement, or some memorandum or note thereof be in writing and signed by the party to be charged thereby or his agent. If, therefore, we find in the evidence offered on the trial no such writing as is contemplated by the statute, it becomes unnecessary to say whether or not the acts of the parties might be construed to amount to a novation, for the renewal of the original contract between plaintiff and the Morgantown Post Company was one which could not be fully performed in one year, even from the time the plaintiff entered the employ of the defendant.

As we have said, no writing was signed by defendant or its agent at the time. The only evidence offered is of the fact

that plaintiff was retained on defendant's pay roll, and checks mailed to him each week until August 2, 1926, and some correspondence between the parties in regard to the termination of plaintiff's services. At this time it seems that plaintiff was demanding additional compensation. On May 20, 1924, defendant wrote plaintiff as follows: "Please accept this as notification that after June 1, 1924, we wish to terminate the existing arrangement by which you are at present authorized to represent The Morgantown Post in the foreign field. A change of policy as well as management makes this necessary. I do not find a contract on our files and am at a loss to figure what sort of an adjustment will be due you, in case you have a contract now in force. Will be pleased to negotiate further, but shall expect the present arrangement to cease June 1, 1924." On May 26th, plaintiff replied as follows: "As you advised the other day in Morgantown, we have destroyed your communication of May 20th, regarding termination of our business relations on June 1st, 1924; also to work on our existing contract until the fall of the year, when we can arrange to work upon a commission of 15% and do the billing and collecting." On July 19, 1924, defendant wrote: "Please accept this as final notice that your services as representative of the Morgantown Post will not be required after August 1, 1924. * * * If you wish to terminate the contract for a bulk sum we are ready to pay you Five Hundred Dollars and cancel the contract and the Fifteen Dollars per week salary will be stopped. Your reference to a Fifteen per cent commission is entirely foreign to the subject. Your contract is on a straight salary basis of Fifteen Dollars per week".

What contract the parties referred to in this correspondence does not appear, whether the original contract with the Morgantown Post Company, or an oral one made later. Mr. J. Monroe Boyer, General Manager of the Morgantown Post and West Virginia Newspaper Publishing Company, testified that when he became connected with the company, he found plaintiff's name on the pay roll and continued to pay him fifteen dollars a week until August 2, 1924, at which time his

services terminated. We do not consider this correspondence, though signed by the defendant, a memorandum sufficient to satisfy the requirement of the statute of frauds. There is nothing to identify the contract mentioned therein. Boyer, who wrote the letters, had only been connected with the defendant company since May 1, 1924, less than a month before the date of the first letter; and he says: "I do not find a contract on our files and am at a loss to figure what sort of an adjustment will be due you, in case you have a contract now in force." The only fact referred to by him in connection with any contract is that plaintiff was entitled to fifteen dollars a week salary. It is essential that a memorandum relied on to take a contract out of the statute of frauds contain every essential term of the agreement except the consideration, or be capable of being made certain by reference to something else whereby the terms of the contract can be ascertained with reasonable certainty. *White* v. *Core,* 20 W. Va. 272; *Crotty* v. *Effler,* 60 W. Va. 258; *Milton Bradley Company* v. *Moore,* 91 W. Va. 77; *Rahm* v. *Klerner,* 99 W. Va. 10. The letters relied on refer to no particular contract; and there is no evidence that Boyer, the writer, had seen or knew of the contract with the Morgantown Post Company.

The judgment of the circuit court will be affirmed.

*Affirmed.*